# Stauffer *versus* Young.

### Evidence in Questions of Fraud.

1. The meaning of the maxim that great latitude of evidence is to be allowed in the trial of questions of fraud, is, that every circumstance in the condition and relation of the parties, and every act and declaration of the person charged with the fraud, shall be competent evidence, if, in the opinion of the judicial mind, it bears such a relation to the transaction under investigation, as in its nature is calculated to persuade the jury that the allegation of fraud is or is not well founded.

2. Where, on the trial of an issue for the purpose of ascertaining the proper amount of a bond, alleged by the obligor to have been obtained by fraud from him, by the obligee, for a greater amount than was really due, the record of a commission of lunacy, which showed that the obligor had been a lunatic previous to the execution of the instrument, and that he was subsequently restored by a decree of the court, was admitted in evidence, the admission of the record, though of doubtful relevancy, could not be objected to by the obligee; for, if it was injurious to him, it was relevant.

3. It was not error to reject the *ex parte* declarations of the obligee as to the loan, not made in the presence of the obligor, nor communicated to him. They were not competent evidence for the obligor.

ERROR to the Common Pleas of *Lancaster county.*

On the 7th of October 1859, there was entered on the records of the court below to August Term 1859, No. 436, a judgment for $10,000, on a bond with a warrant of attorney, executed by David Long, Sr., in favour of B. M. Stauffer, in the penalty of $10,000, conditioned for the payment of $5000, with legal interest, on the next succeeding first day of February.

On the 26th of December the affidavit of David Long was filed, setting forth that he had never signed the said judgment-bond for $5000; that he had borrowed of Stauffer, about a year ago, $500, for which he gave a judgment-bond, and subsequently, at various times, the further sum of $347.82, for which he gave his judgment-bond, entered up to August Term 1859, No. 490; and that the judgment for $10,000, to August 1st 1859, No. 436, was invalid and fraudulent. On which affidavit a rule was granted on the plaintiff, Stauffer, to show cause why an issue should not be granted to try the validity of said judgment. On the 22d of March 1860, the judgment was opened, and the defendant allowed to make defence.

An ordinary declaration in debt on the bond was then filed for plaintiff, to which the defendant pleaded *non est factum*, payment, and payment with leave to give the special matters in evidence.

On the trial the plaintiff, without objection, proved the execution of the bond by one of the subscribing witnesses. The cross-examination of this witness elicited nothing tending to impair

the legality of the bond. His testimony showed that it was executed at Stauffer's mill, in the morning; that the bond was prepared before he saw it; that it was read to Long with the $10,000 above, and $5000 below; that money was counted down by Stauffer, but how much witness did not know, having left the room before it was all counted; and that Long did not look over the bond, or read it himself before he signed it.

The bond was then read in evidence, and the case for the plaintiff closed.

The defendant's counsel then called several witnesses, and having proved that Long was about eighty-two or eighty-three years of age, and was residing in Manheim; that in January 1859 he had applied to Stauffer for a loan of $500, which Stauffer promised to let him have, and had spoken about subsequently, to wit, on the 10th of March 1859, &c., proceeded to prove, under exception, on the part of the plaintiff, the matters set forth in the following assignments of error, all which was objected to as offered, on the ground that it was irrelevant, incompetent, and calculated to mislead and prejudice.

The court below (HAYES, P. J.) submitted to the jury to say, under all the facts and circumstances of the case, whether the sum loaned and delivered by Stauffer to Long, on the 8th of February 1859, was $500 or $5000, reminding them that, as the difference between the sum claimed, and the sum admitted to be due, was very considerable, and the defence founded upon imputations of a serious character, it was incumbent on them to investigate the matter with the utmost care and deliberation. There was a verdict and judgment in favour of the plaintiff in the issue for $540, the amount admitted to be due by the defendant, with costs. Whereupon the plaintiff sued out this writ, and assigned here as cause for reversal the following matters, viz. :—

1. The court erred in the admission in evidence of the record of a commission of lunacy in case of David Long, the defendant. "March 8th 1830, petition and affidavit presented. Inquisition, 15th March 1830. Committee appointed. January 20th 1844, Michael Moore appointed. August 23d 1848, petition of David Long presented. 22d September 1848, David Long restored."

2. The court erred in the admission of the evidence of George W. Knox, Esq., as embraced in the following offers, to which bills of exception were sealed, viz. : "Had you a claim put into your hands, on the part of the Commonwealth of Pennsylvania, against Benjamin M. Stauffer as register? If so, state when it was, and what was the amount." "Did you bring suit against Benjamin M. Stauffer for the balance?" "Certified copies of the account of Benjamin M. Stauffer, register of Lancaster county, with the Commonwealth of Pennsylvania, viz. : two certifi-

[Stauffer v. Young.]

:ates, one of the auditor-general, and the other of the treasurer's office, offered in evidence."

3. The court erred in the admission in evidence of the matters embraced in the following offer : " Mortgage from Benjamin M. Stauffer to Isaac E. Hiester, Esq., dated 23d August 1858, recorded in Mortgage-book 15, page 355, for the sum of $2000, payable April 1st 1859."

4. The court erred in the admission in evidence of the matters in the following offer : Three notes, admitted to be genuine.

1. White Oak Mill, March 9th 1859, for $150 at twenty days —David Long to Benjamin M. Stauffer.

2. White Oak, June 30th 1859, for $160 at six months— David Long to Benjamin M. Stauffer.

3. White Oak, August 27th 1859, for $30, at one day—David Long to Benjamin M. Stauffer.

5. The court erred in the admission in evidence of the following offer : " Destruction occasioned by the fire occurring in the mill of Benjamin M. Stauffer, offered in evidence." " Letter to the secretary of the Inland Insurance Company. Loss amounting to $8970, 8th April 1857."

6. The court erred in the admission of the evidence of John Sheaffer, Michael Moore, Henry Landis, Martin Hershey, Henry Gingrich, John Kline, David May, John Dyer, Samuel Plasterer, Frederick Ensminger, and Peter Leib, that they had never known or heard of David Long paying out a large sum of money, or making a large purchase since February 8th 1859.

7. The court erred in the admission of the evidence of John K. Reed, showing that plaintiff had had notes discounted with the banking-house of John K. Reed & Co., subsequent to the date of the execution of the bond in suit.

8. The court erred in the rejection of the evidence of Henry Conolly, as contained in the following offer of plaintiff: " We offer to prove, by this witness, that about or shortly after January 1st 1859, he applied to Benjamin M. Stauffer for a loan of $800, to which Stauffer replied, that if witness had asked him earlier, he could have had it, but that he, Stauffer, had promised David Long $5000, but he would still try to make the money out for him."

*Isaac E. Hiester* and *W. W. Brown*, for plaintiff.—The specifications of error are all obnoxious to the same objection, and will be considered together. The learned judge below admitted the evidence under the erroneous notion that the case was one of fraudulent combination, in which, after direct evidence has been given of collusion between the parties to the alleged fraud, a wide latitude is allowed in the admission of their acts and declarations. But the issue here was not whether this bond was

collusive between the parties, and fraudulent as to creditors, but simply on a bond for the recovery of the money due on its face. The fact in controversy was not fraud, but something from which fraud was to be inferred. The evidence of defendant's lunacy in 1830, and his restoration in 1848, could in no way elucidate the question in controversy, except through an unwarrantable series of inferences, beginning with the defendant's mental weakness and liability to imposition, and ending with the conclusion that *therefore* he was imposed upon and cheated by the plaintiff. But conclusions arrived at through a chain of two or more inferences, deducible from a remote fact, are too uncertain in the administration of justice to be relied on, and are rejected by the law.

The evidence admitted by the court, as set out in the 2d, 3d, 4th, 5th, and 7th assignments of error, were as to collateral facts having no reliable connection with the subject-matter of the suit, nor tending to establish fraud or imposition. The jury were allowed to infer fraud from them in violation of the rule which requires it to be *proved*, and never *presumes* it. That plaintiff was indebted to the Commonwealth, or to Mr. Hiester, or held other notes against Long for money loaned after the execution of this bond, or had his property destroyed by fire and demanded the insurance-money, or was in the habit of having notes discounted at the banking-house of Reed & Co., may all be true without injuring the defendant in any way, because none of these acts were connected with the transaction on which this suit is brought. Nor does the fact that he had debts of his own about this time permit the fair inference that he had no money to lend, it was therefore not competent to prove the issue here, which was that the bond was procured by fraud. The rule laid down by Starkie and Best on Evidence, as to the proof of disputed facts by collateral circumstances, was violated in the admission of this evidence.

The evidence mentioned in the sixth assignment of error was in effect the admission of acts and declarations of a defendant in his own favour, which is not warranted by any rule of evidence.

*William B. Fordney* and *Jacob B. Amwake*, for defendant.— In this case fraud was alleged as the sole defence of the defendant; and if each one of the circumstances offered in evidence tended to elucidate the point in issue, or had even a remote bearing on it, it was admissible under the ruling of this court in Zerbe *v.* Miller, 4 Harris 495.

It was important to show the mental and physical *status* of defendant, and that it was known to plaintiff. His extreme age, great debility, long former mental affliction, in connection with the unusually large sum of money involved, the time and place where

[Stauffer v. Young.]

the transaction took place, and the absence of friends or counsel or supervision, were all calculated to excite suspicion: Kauffman v. Swarr, 5 Barr 231. The plaintiff averred that he raised this sum as a great favour to the defendant, and could show what he had done with it. Omitting to do so, we offered to show that defendant had no wants for the money, and could not receive and dispose of so large a sum without some of his neighbours knowing something of it. At worst it was only superfluous, but we insist that it was within the rule of Kauffman v. Swarr, 5 Barr 231, and Reinhard v. Keenbartz, 6 Watts 93. So also as to the other facts objected to; the jury had a right to all of them in a question of fraud: Baltimore and Ohio Railroad Co. v. Hodge, 10 Casey 221, and Kaine v. Weigly, 10 Harris 183–4.

The opinion of the court was delivered, June 5th 1861, by

WOODWARD, J.—The plaintiff, holding the bond of the defendant, dated 8th January 1859, in the penal sum of $10,000, conditioned for the payment of $5000 on the 1st of April 1859, and having entered judgment thereon in the Common Pleas of Lancaster county, the court, upon application of the defendant and proper affidavits filed, opened the judgment and let the defendant into his defence, which consisted of an allegation that the sum borrowed of the plaintiff was $500, and that the bond was obtained from him fraudulently for the sum of $5000.

The genuineness of the bond as a security for the smaller sum was admitted; it was resisted as false only as a bond for the larger sum. The question, therefore, was purely one of fact, and as such it was properly submitted to the jury. The only errors complained of were in admitting and rejecting evidence. Of the eight errors assigned, all but the last relate to evidence admitted.

If the signature of the defendant, an old man of eighty-two or eighty-three years of age, was obtained to a bond of $5000, in consideration of a loan for only $500, a gross fraud was perpetrated. But how was it to be proved? The bond was executed at the plaintiff's mill in the presence of a single witness, one of the plaintiff's millers, who saw the bond signed, heard it read to the defendant as a bond for $5000, and saw bank notes counted down to him; but the witness left the presence of the parties before the money was all counted, and was unable to prove the amount that was handed to the defendant.

Now a contract of such apparent regularity could be impeached for fraud by no direct and positive proof. It is very seldom that frauds are so bunglingly executed as to admit of direct proof. Unless exposed by circumstantial evidence they cannot generally be exposed at all. And no rigid rule of evidence can be applied to measure the admissibility of circumstances, for

they arise out of the condition, relation, conduct, and declarations of the parties, and those are infinitely diversified. Hence it has grown into a maxim, that great latitude of evidence is to be allowed in the trial of questions of fraud. The meaning of which maxim I take to be, that every circumstance in the condition and relation of the parties, and every act and declaration of the party charged with the fraud, shall be competent evidence, if in the opinion of the judicial mind it bears such a relation to. the transaction under investigation as in its nature is calculated to persuade the reasonable men in the jury-box to the belief that the allegation of fraud is or is not well founded. Whatever is not of a nature to beget mental conviction upon the point under inquiry, is irrelevant evidence, and should be rejected—whatever is of that nature should be admitted. And of this moral quality of proofs the presiding judge is the arbiter. He admits and rejects, under our supervision, according to his estimate, not of the effect of the evidence, for that is for the jury, but according to his estimate of the fitness of the evidence to conduct human reason to a sound conclusion on the point in question. In the exercise of this high discretion he is to be careful not to set up an assumption of the fraud, and then to reason that this or that tends to prove it. He is rather to start with the presumption that a transaction, fair on its face, was fair in fact, which is the meaning of that other maxim that fraud is never to be presumed. Two parties, these two for instance, are before the judge on a direct contradiction, the plaintiff alleging that the bond he holds in his hand is a genuine instrument for an honest loan of $5000, the defendant that it is fraudulent, in so far as it is a bond for more than $500. The *à priori* presumptions belong to the plaintiff. The judge presumes it to be a bond for $5000, because it purports to be, but he hears the defendant's allegation and offer of proof of circumstances, and in so far as he sees that the circumstances offered are reasonably calculated to countervail the *primâ facie* presumption, and carry conviction into the jury-box, that what the defendant alleges is true, he admits his evidence. If any prescript rule in the law of evidence is applicable to the offer, the judge applies it of course; if there be no such rule, he guides himself by the sound discretion I have indicated.

And when this has been done, and the jury have found the fraud, we always expect to hear it argued here that this and that piece of evidence was incompetent to establish it, and should not have been admitted—one circumstance was too remote to furnish any inference, another was too trifling, and another was calculated to mislead the jury away from the real issue. It is always added that fraud is not to be presumed, and must be proved.

. I have said that the judge is not to presume a fraud, but rather that there was no fraud. To say, however, that he is not to

[Stauffer *v.* Young.]

admit circumstantial evidence from which a jury may infer it, is to say what cannot be supported by authority. A guilty deed, like any other fact, may be inferentially established. Almost all human knowledge rests in inferences from proofs.

The fact that a fraud has been committed is not an exception, but may be proved in the same manner. Nor has the author of a fraud any right to complain of the latitude of proofs which the law allows, for it is a universal truth, that the more thoroughly an honest transaction is investigated, the more honest will it appear. It is only bad deeds which are reproved by coming to the light. When a party, whom a jury has convicted of fraud, has nothing to allege except *excess* of proofs—when his complaint is, that the facts which preceded and attended his transaction have been too fully exposed and overhauled, his position is necessarily one of infirmity and suspicion. True, the jury may have been misled, but he is bound to show that very clearly. If there was evidence from which a jury might reasonably have inferred the fraud, we are to presume they based their verdict on that evidence, even though other facts were in proof which were irrelevant. In such a case what was irrelevant was harmless.

It appears to us that the learned judge tried this cause in substantial accordance with the principles here stated. He set up no presumption of fraud against the plaintiff, but he admitted evidence which he thought, and which we think, was reasonably calculated to persuade a jury to believe the fraud alleged by the defendant.

The most vulnerable piece of evidence admitted was that which related to the commission of lunacy, which issued in 1830 against Long, the defendant. For eighteen years he was in legal commission as a lunatic, but he was restored by the decree of the court on the 22d of September 1848. What had this to do with his capacity to execute the bond in suit on the 8th of January 1859?

Long was, as already stated, an old man—he had married a young wife some seven or eight years before this bond was given, and in December 1858 he had bought a house of Elizabeth Shelter for $550, for which he had given his judgment-bond, which he paid off in March 1859. In January 1859, he was heard by Benjamin White to ask Stauffer to lend him $500, and in March 1859 Stauffer declared to David Beck that he had let Long have $500, and that he wanted $1000 more. March 9th 1859, he made his note to Stauffer for $150, at twenty days—June 30th 1859, another note for $160, at six months—August 27th 1859, another note for $30, at one day, and on 5th October 1859, he made his judgment-bond for $347.82, the amount of these three notes—and the agent and scrivener of Stauffer swore that

[Stauffer *v.* Young.]

Long said, when he executed the bond, that he was to get $150 more from Stauffer, and then he would have the whole $1000 that Stauffer had promised him.  He had other transactions in lands and money with Henry Landis and Jesse Landis to a large amount, which consisted, however, for the most part in borrowing and buying.  His payments, so far as proved, were not in large sums, and his neighbours knew of no large sums of money paid out by him after 8th February 1859.  It seems to have been thought that his former lunacy was a fact fit to be added to the circumstances of his great age and complications in money transactions, as affording ground for presuming him peculiarly liable to be overreached and imposed upon.

We have great doubts of the relevancy of that evidence.  But let us see how the objection to it stands.  The record showed him a restored man.  The Act of Assembly authorized the court to dissolve the commission only when he became "restored to a sound state of mind."  Then the record objected to by the plaintiff is to be taken as establishing Long's soundness, which is just the conclusion the plaintiff wanted the jury to adopt.  But the fact that he had been declared a lunatic, says the plaintiff, was calculated to shake the confidence of the jury in his present mental soundness.  Then it was relevant, is the reply.  The plaintiff is in a dilemma with his objection.  Either the evidence was beneficial to him, though irrelevant, or it was injurious to him, and therefore competent.  Whichever way it be taken, it is manifestly no ground for reversal.

The other assignments are founded on evidence that was clearly competent, as tending to show Stauffer's inability to loan a large amount of money in January 1859; the extent of Long's necessities and use of moneys, and the transactions out of which the bond of October 1859 arose.  All this evidence bears more or less directly on the fact in issue.  And if any part of it could be shown to be clearly irrelevant, it would not be a reason for reversing, unless it was also shown that it was mischievous as well as irrelevant.  This has not been shown.

The only evidence which the court is complained of for excluding, was Stauffer's *ex parte* declaration made to Henry Connelly in January 1859, to the effect that he had promised Long a loan of $5000.  On no principle whatever was Stauffer's declaration, not made in Long's presence nor communicated to him, competent for himself.

Unable to discover in the record any error that demands redress,

The judgment is affirmed.