# Elizabeth A. Glessner *v.* Maria Patterson et al., Adm. of Wm. E. Patterson, deceased.

*Decedents' estates—Claim for money loaned—Fraud—Evidence.*

The meaning of the maxim that great liberality of evidence is to be allowed in the trial of questions of fraud is that every circumstance in the condition and relation of the parties, and every act and declaration of the person charged with the fraud shall be competent evidence if, in the opinion of the judicial mind, it bears such a relation to the transaction under investigation as in its nature is calculated to persuade the jury that the allegation of fraud is or is not well founded.

In an action against administrators to recover money alleged to have been loaned at various times to decedent, defendants offered to show that during the whole period covering the alleged loans plaintiff was without means or property except such as she received from decedent; that neither her bank account nor his showed the possession by her or receipt by him of any such sums of money as she claimed to have loaned; that he purchased provisions and clothing and had them secretly sent to her house which he visited at all hours of day and night, and entered without summoning any one, opening the door himself and passing upstairs to her bedroom. Testimony was offered not only as to a general course of conduct, but of specific acts tending to establish the fact of illicit intimacy. Defendants also offered to show that the statement made by plaintiff of the manner in which the money had been paid by her, and the use to which it had been put by decedent, was incorrect. *Held*, that the testimony should have been admitted.

Argued May 17, 1894. Appeal, No. 400, Jan. T., 1894, by defendants, from judgment of C. P. York Co., Jan. T., 1891, No. 10, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Assumpsit for money loaned. Appeal from arbitrators.

At the trial it appeared that plaintiff claimed to recover $12,290 alleged to have been loaned at various times to Wm. E. Patterson, deceased, during his lifetime.

When James E. Glessner, a witness for plaintiff, was on the stand, defendant made the following offer on cross-examination:

The witness having already testified that plaintiff exhibited to him on a number of occasions the $5,000 note spoken of in plaintiff's statement, and having detailed the facts and circumstances connected with his examination of the note in the

presence of plaintiff, and having described from memory the contents of the note, it is now proposed to further test the recollection of what occurred at those times, by asking him to state what plaintiff said at that time to him, if anything, in regard to the moneys for which the note was given, and any other facts and circumstances connected with it, which she may have stated to him at that time. For the purpose of testing his recollection, and for the purpose of ascertaining all the facts connected with the exhibition of the note to him, and his examination of it. Objected to as not proper cross-examination, because we did not give any declarations at all that she made at the time. It is just opening the door to a lot of collateral matter not in the case. Objection sustained by the court, and exception. [13]

Defendants offered to prove that decedent did not make certain investments and expenditures as stated by plaintiff. Objected to, objection sustained and exception. [15, 16, 27]

Defendants offered to prove that plaintiff was without property sufficient to make the alleged loan ; objected to, objection sustained and exception. [19]

Defendants offered to prove by J. K. P. Fulton and others that during the period from April 1, 1885, to the death of William E. Patterson in September, 1890, the said William E. Patterson, defendants' intestate, was in the constant habit of visiting plaintiff at the house No. 102 South George street at all hours of the day and night, daily and nightly, when he was in town. That he was accustomed to enter the house without ringing or knocking, and unannounced and unattended walk into said house, upstairs and into plaintiff's bedroom. This to be followed by proof that the said intestate bought and paid for provisions, and had them secretly sent to plaintiff's residence, and also articles of clothing for plaintiff. Also by proof that on one occasion, in the spring or summer of 1885, the said intestate and plaintiff spent several hours together in a bedroom at plaintiff's residence, alone, with closed doors ; and, upon another occasion, were surprised by a witness in said bedroom alone together upon a bed. Also, that on one occasion plaintiff and defendants' intestate met clandestinely in Philadelphia, and went alone to a hotel together, the precise times and circumstances to be given by the witnesses. [To be fol-

lowed by evidence that plaintiff, during the period from April, 1885, to the death of William E. Patterson, did not own, and was not legally possessed of any such sum or sums as claimed by her in this suit, nor of any sum or sums for investment; nor had or owned any other money or property, except such as she received from intestate.] For the purpose of sustaining the issue on part of defendants; showing the falsity of plaintiff's claim; that she did not loan any sums of money to intestate, as claimed, and that the relation between plaintiff and William E. Patterson during said period was not that of creditor and debtor, but that of mistress and lover; and for the purpose of explaining the testimony introduced on behalf of plaintiff of alleged statements and admissions by intestate in regard to plaintiff, and for the purpose of showing that any admissions or notes of said intestate to plaintiff were without legal consideration. Objected to as irrelevant. The Court: We reject that offer for the present, as it stands. There is a great deal of that that certainly is not evidence. Evidence rejected, exception. [20]

Defendants renewed the preceding offer, with the part in brackets stricken out, for the additional purpose of contradicting the testimony of Lillie Miller and Harriet Bowles, and all the inmates of the house who were called as plaintiff's witnesses, and denied knowledge of the frequent visits of William E. Patterson at that house, and of the fact that he carried a night key and went and came unattended. Objected to as irrelevant; objection sustained; exception. [21]

Defendants offered a paper admitted to have been read by plaintiff's counsel at the trial of this case before arbitrators; and further offer to prove by the officers and books and records of the York County National Bank that during the period from April 1, 1885, down to the time of the death of William E. Patterson, plaintiff got no moneys out of that bank, or any such sums, or anywhere near approximating the amounts claimed to have been loaned by her to William E. Patterson; that she got no moneys out of that bank in any other way than by checks upon her account; that during that period she had no sums in that bank corresponding, or anywhere near approximating in amount to those alleged to have been loaned to William E. Patterson, and had no sums in that bank, and drew none

out, except inconsiderable and trifling amounts. For the purpose of sustaining the issue on the part of the defendants; for the purpose of affecting the credibility of the plaintiff; for the purpose of showing the falsity of her claims; and for the purpose of showing that she made to Edward Long false statements in regard to this claim sued upon by her, and statements that were contradictory of the statements made by witnesses produced at this trial on her behalf. Objected to; objection sustained and exception. [22–24]

The paper contained an admission that plaintiff had no other bank account except the one mentioned. The admission was stated in the paper to be made to save cost of witnesses to prove this fact before the arbitrators.

Defendants offered to prove by the books, records and officers of the York County National Bank that William E. Patterson kept his bank account in said bank at the time of the transactions testified to by plaintiff's witnesses, and that he did not deposit the sum of $5,000 on or about the 15th of April, 1885; and to show what the deposits were, and that they were not such sums or amounts as were claimed to have been received by him from plaintiff. For the purpose of sustaining the issue on behalf of defendants, and of showing the improbability of plaintiff's claim, and that defendants' intestate did not receive from plaintiff the moneys alleged by plaintiff's witnesses.

Objected to as irrelevant. The Court: The evidence comes within the decision of Mitchell v. Douglas, 35 Pa. 440, where similar evidence was offered and rejected, and the Supreme Court said it was not competent evidence. We refuse the offer, and seal an exception for defendant. [28]

Verdict and judgment for plaintiff for $5,792.50.

*Errors assigned* were, among others, (13, 15, 16, 19–24, 27, 28) rulings on evidence, quoting bills of exception.

*H. C. Niles, N. M. Wanner, W. F. Bay Stewart, Geo. E. Neff* and *John W. Heller,* for appellant.—The financial standing of the parties is always open to investigation, and such evidence is admissible wherever fraud and conspiracy are charged, as they are in this case: Stevenson v. Stewart, 11 Pa. 307; Kauffman v. Swar, 5 Pa. 231; Hartman v. Shaffer, 71 Pa. 315.

Under the plea of non assumpsit anything that shows that, ex æquo et bono, the defendant ought not to recover, is admissible : Falconer v. Smith, 18 Pa. 130 ; Blessing v. Miller, 102 Pa. 45 ; Moyer's Admr. v. Fisher, 24 Pa. 513 ; Van Storch v. Griffin, 77 Pa. 504 ; Gaw v. Wolcott, 10 Pa. 43 ; Fisher v. Ball, 93 Pa. 393 ; Wilson's Ap., 109 Pa. 609.

*H. L. Fisher, G. G. Fisher* and *Geise, Ziegler & Strawbridge* with him, for appellee.—Without some evidence to cast suspicion upon a transaction, the pecuniary circumstances of the respective parties and their relations to each other would be irrelevant and calculated to mislead the jury : Hartman v. Shaffer, 71 Pa. 315 ; Woods v. Gummert, 67 Pa. 136.

Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed ; no presumption can be drawn from a presumption ; if there be no fixed or ascertained fact from which the inference of any other fact may be drawn, the law permits none to be drawn from it : Douglass v. Mitchell's Exr., 35 Pa. 440 ; McAleer v. McMurray, 58 Pa. 135 ; Ry. Co. v. Henrice, 92 Pa. 434.

OPINION BY MR. JUSTICE FELL, Oct. 1, 1894 :

The plaintiff's claim was against the estate of a decedent for money loaned at different times extending over a period of five years, for which she had no written obligation, and for the greater part of which it was conceded that none had ever been given. These alleged loans amounted to over $12,000. The first loan of $5,000 it was claimed had been made in 1885, and the others at different times between then and 1890. It was averred that a judgment note had been given for the loan of $5,000, and that it had been surrendered to the decedent in 1890 in order that a new note might be made by him for the whole amount that he then owed the plaintiff and judgment entered thereon in her favor, and that he had failed to do this as agreed.

The testimony in support of this claim was directed to show admissions and declarations made by the decedent, and to establish as a fact that the plaintiff had had at one time in her possession $25,000 in money, and at another a judgment note for $5,000, made in her favor by the decedent.

The defence was that the whole claim was fraudulent, that the plaintiff had loaned no money to the decedent, and had had none to loan ; and that any appearance of business transactions between them had been a mere pretence to conceal their true relation.    While it was not possible directly to contradict many of the plaintiff's witnesses as to alleged conversations and occurrences, as they were the only surviving persons who were present at the time, the defence attempted to show by cross-examination and by the proof of independent facts that the plaintiff was without means, and had never owned the money said to have been loaned ; that she and her family had for years been supported by the decedent, who had given her the only property she ever possessed, and with whom her relations had been meretricious.

Several distinct offers were made to show that during the whole period covering the alleged loans the plaintiff was without means or property except such as she received from the decedent ; that neither her bank account nor his showed the possession by her or receipt by him of any such sums of money as she claimed to have loaned ; that he purchased provisions and clothing and had them secretly sent to her house, which he visited at all hours of day and night, and entered without summoning any one, opening the door himself and passing upstairs to her bedroom.    Testimony was offered not only of a general course of conduct, but of specific acts tending to establish the fact of illicit intimacy.    This testimony was excluded, as was the further offer of the defendants to show that the statement made by the plaintiff of the manner in which the money had been paid by her, and the use to which it had been put by the decedent, was incorrect.

What was shown was sufficient to cast suspicion upon the transaction, and the question of fraud was involved in the issue on trial.    The rule that great latitude should be given in investigating questions of fraud is elementary : B. & O. R. R. Co. v. Hoge, 34 Pa. 214.    It was said in Reinhard v. Keenbartz, 6 Watts, 93 : " Upon the trial of an issue involving questions of fraud, great liberality should be allowed in the admission of evidence, that the jury may be able to determine from all the circumstances whether the transaction was fraudulent or not."    In Stauffer v. Young, 39 Pa. 455, the reason

of the rule was fully and clearly stated: " The meaning of the maxim that great liberality of evidence is to be allowed in the trial of questions of fraud is that every circumstance in the condition and relation of the parties, and every act and declaration of the person charged with the fraud, shall be competent evidence, if in the opinion of the judicial mind it bears such a relation to the transaction under investigation as in its nature is calculated to persuade the jury that the allegation of fraud is or is not well founded."

The claim presented by the plaintiff was not within the rules which govern business transactions. It was exceptional, if not extraordinary. An amount of money large in view of the circumstances of either of the parties was said to have been loaned by a person of limited means and possessing no visible property to one who apparently had no occasion to borrow. No writing attested the transaction, and for the greater part of the loan it was not claimed that any had ever been given. The only written obligation that was said to have been executed had been surrendered six months before the death of the decedent under a promise by him to execute a new one, and this promise remained at his death unfulfilled, without demand or protest by the plaintiff. The plaintiff's testimony itself suggested the necessity of the most searching inquiry.

The action was to recover for money loaned, and the narrow question was whether the relation of creditor and debtor had existed. Every act and declaration of the plaintiff, and every fact and circumstance which would throw light upon this question and disclose the true relation of the parties, was important in ascertaining the truth. The possession of a large sum of money by the plaintiff gave color to the statement that a loan had been made, by showing that she had the means with which to make it, and for this purpose testimony as to it was offered; but to affect the credibility of her witness as well as to rebut the presumption of her ownership of the money, if it had been in her possession, it was competent to show that she was without property, and all that she said at that time or at any other time in relation to the source from which the money came it was the right of the defendant to elicit. The same rule applies to the declarations made by her when she exhibited the judgment note, to her statements of the manner in which the

money was paid to the decedent and of the uses to which he put it, and to any demand made by her of his administrators inconsistent with the claim presented at the trial.

The plaintiff's case rested almost wholly upon proof of acts to which she was a party, and of declarations of the decedent made for the most part in her presence and elicited by her suggestions and inquiries. These proofs were not to be exhibited at arm's length, but were open to the most rigid and searching examination. As the plaintiff participated in them, all she said at the time, or before or after, which explained or qualified them, or tended to show the falsity of her claim, was evidence for the defence.

The reasons stated apply to the thirteenth, fifteenth, sixteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-seventh and twenty-eighth assignments of error, which are sustained.

The judgment is reversed and a venire facias de novo awarded.