# A. B. Sebring *v.* W. G. Brickley, Appellant.

*Insurance—Assignment of policy—Bona fide creditors.*

Policies of life insurance, bona fide assigned to the wife or children of, or any relative dependent on, such assignor, are vested in such wife or children free and clear from all claims of the creditors of such assignor. Such an assignment is not per se an offense against the statute of 13th Elizabeth, but the bona fides of the transaction may be inquired into.

*Assignment of policy—Bona fides—Question for jury.*

An assignment by a father who was insolvent of the beneficial interest in policies of insurance on his wife's life, to his son, does not, because of such

insolvency, establish such a condition of fraud or lack of bona fides in the assignment as will justify binding instructions to the jury, especially when there was evidence tending to show indebtedness by the father to the son; the question of the bona fides of and consideration for the assignment was for the jury under proper instructions as to what constituted good faith in such assignment.

*Fraud—Allegation thereof—Proof.*

It is incumbent upon a party alleging fraud to prove the same by clear and satisfactory evidence, either by direct proof or by facts sufficient to warrant a presumption of its existence.

Argued Feb. 15, 1898. Appeal, No. 12, Feb. T., 1898, by defendant, from judgment of C. P. Clearfield Co., Feb. T., 1897, No. 85, on verdict for plaintiff. Before RICE, P. J., WICK-HAM, BEAVER, ORLADY and SMITH, JJ. Reversed.

Feigned issue. Before RAYBURN, P. J., of the 33d judicial district, specially presiding.

The following facts appear from the record and evidence: The plaintiff in the issue was a judgment creditor of one, A. W. Brickley, who had assigned to his son, W. G. Brickley, the defendant in the issue, two policies on the life of his wife, Kate J. Brickley. The wife died July 22, 1896. The policies were assigned October 18, 1895. At the time of the assignment, A. W. Brickley was insolvent and his real estate was incumbered by judgments in favor of the wife. There was evidence, although conflicting, tending to show indebtedness by the father to the son at the time of the assignment; also evidence tending to show that the son was a weakly and sickly young man. After the death of the wife and mother the plaintiff issued an attachment execution summoning the insurance company as garnishee, and the issue was awarded to try the right to the money paid into court.

The plaintiff presented the following point: " As it appears by the undisputed testimony in the case that at the time of the assignment of the policies of insurance, the assignor, A. W. Brickley was insolvent, his real estate having been incumbered by his wife's judgments, and other judgments, and his property both personal and real having been sold to his wife prior to the assignments, there is no such consideration for the assignments shown as entitles the defendant, W. G. Brickley, to retain the money against the plaintiff, A. B. Sebring, and your

verdict must be for the plaintiff," [1] which was affirmed by the court.

Verdict and judgment for plaintiff for $420. Defendant appealed.

*Error assigned* among others was (1) affirmance of plaintiff's point, reciting same.

*Roland D. Swoope,* with him *William F. Patton,* for appellant.—The assignments of these policies, if made bona fide, were not rendered fraudulent by the mere fact of the insolvency : McCutcheon's Appeal, 99 Pa. 133.

It was, therefore, necessary for the plaintiff in this issue to show something more than the mere insolvency of A. W. Brickley at the time of the assignments of the policies in order to make out a case of fraud sufficient to render the assignments void as against the attaching creditor : Reehling v. Byers, 94 Pa. 316 ; Brown v. McCormick, 135 Pa. 434.

Alleged fraud must be established either by direct proof or by facts sufficient to warrant the presumption of its existence clearly proven. It is not enough to charge fraud and prove in support thereof slight circumstances of suspicion only: Jones v. Lewis, 148 Pa. 234 ; Hagy v. Poike, 160 Pa. 522 ; Bank v. Tinker, 158 Pa. 17.

The case at bar was one peculiarly for the jury. The criterion is not the effect but the fraudulent intent : Werner v. Zierfuss, 162 Pa. 360.

It was not the province of the court to determine the question of fraud in fact : McGrann v. Railroad Co., 111 Pa. 171 ; Adams v. Hitner, 140 Pa. 166.

*Thos. H. Murray,* with him *Allison O. Smith,* for appellee.— It is well settled that one in debt cannot convey all his property to his wife or children by way of settlement, merely and without an adequate consideration. . . . Thus sale of all a man's property on long bonds, is invalid, on the ground of hindering and delaying. In such case the law determines the intent to be fraudulent on the fact of the transaction, which, on its front shows it must necessarily prejudice the rights of creditors : Hennon v. McClane, 88 Pa. 222 ; Heath v. Page, 63 Pa. 108, 125.

If there had, in the first instance, been shown such a valid consideration as would have been good against creditors, the burden of showing it fraudulent might have been on the plaintiff, the appellee. But no such consideration was shown.

A son working for his father after he is of age does not thereby acquire a right of action against his father, unless there has been a previous contract or agreement to pay on the part of the father: Zerbe v. Miller, 16 Pa. 488; Eberly v. Groff, 21 Pa. 251.

Insurance policies are in no wise more exempt than other property from the effect of a fraudulent assignment: Elliott's Appeal, 50 Pa. 75; McCutcheon's Appeal, 99 Pa. 133.

There was no question for the court to submit to the jury here.

The sale of lands or goods by an indebted person for less than their value is ipso facto fraudulent in both the vendor and vendee: Davidson v. Little, 22 Pa. 245; Rhoads v. Blatt, 84 Pa. 31.

This doctrine is also reaffirmed in Clark v. Douglass, 62 Pa. 408; Barrett v. Nealon, 119 Pa. 171.

OPINION BY BEAVER, J., April 25, 1898:

The father, who was the beneficiary, and the mother, who was the assured, in two several policies of life insurance assigned the same to their son, the defendant in this case, nine months or more prior to the death of the assured. The effect of this assignment was to make the son instead of the husband and father the beneficiary of these policies. So far as appears by the evidence, the husband and father had no interest in the policies, except that of beneficiary named therein. Whether the premiums were paid by him or by the assured does not affirmatively appear. By joining in the assignment he relinquished his expectation of benefits to be thereafter derived from the policies and agreed that such expectation of future benefits should be transferred to his son. It is not denied that the transaction comes within the provisions of the act of April 15, 1868, which provides, "That all policies of life insurance or annuities upon the life of any person which may hereafter mature and which have been or shall be taken out for the benefit of or bona fide assigned to the wife or children or any relative depend-

ent upon such person shall be vested in such wife or children or other relative full and clear from all claims of the creditors of such person."

If the defendant had been named in the policies, as originally issued, as the beneficiary therein, there could be no question in regard to his right to receive the entire amount of said policies, for, as was said in McCutcheon's Appeal, 99 Pa. 133, referring to the act of 1868, supra, " The plain meaning of this act is that protection shall be given to the wife, children or dependent relative of the assured in two distinct classes of cases : first, those in which the policy was originally issued or taken out for the benefit of the person named and, second, those in which policies previously issued shall be in good faith assigned to those persons. The question of good faith or fraud only arises in the latter class, that is, when the title of the beneficiary arises by assignment. When it exists by force of an original issue in the name or for the benefit of the beneficiary, the title is good, notwithstanding the claims of creditors ; in other words, the very object and purpose of the act was to enable insolvent persons to make provision in this way for their families or dependent relatives which should be good and effective as against and free and clear of all claims of creditors." The defendant, however, claiming, as he does, the proceeds of the policies by assignment, belongs to the second class provided for in the act of assembly referred to, and is entitled to hold the proceeds thereof only in case said assignment was bona fide made.

The plaintiff, a creditor of the father, issued his attachment upon a judgment recovered against him prior to the death of the assured and summoned the insurance company as garnishee. A feigned issue was awarded by the court below to try the title to so much of the money arising under said policies of insurance as was necessary to pay the plaintiff's judgment and costs, in which the plaintiff, claiming by virtue of his attachment and the defendant by virtue of his assignment, were made parties.

The trial judge directed the jury to return a verdict for the plaintiff, basing such direction upon the following point submitted by the plaintiff : " As it appears by the undisputed testimony in the case that at the time of the assignment of the policies of insurance, the assignor, A. W. Brickley, was insolvent, his real estate having been incumbered by his wife's judg-

ment and other judgments, and his property both personal and real having been sold to his wife prior to the assignment, there is no such consideration for the assignments shown as entitled the defendant, W. G. Brickley, to retain the money against the plaintiff, A. B. Sebring, and your verdict must be for the plaintiff."

Eight several points submitted by the defendant were, without separate consideration, refused generally. The sole and simple question in the case was the bona fides of the assignment of the policies of insurance by the father and mother to the defendant, their son, and this was for the jury and should have been submitted for their consideration. What is meant by the expression "bona fide assigned" in the act of 1868? In order to a clear understanding of and answer to this question, we must look at the law as it existed at the time of the passage of the act.

In 1865 it was decided in the Appeal of Elliott's Executor, 50 Pa. 75, as fairly stated in the syllabus, that "The assignment of policies of life insurance by a debtor who was insolvent when insured, in trust for the benefit of his wife, is fraudulent and void as against creditors, but policies of insurance effected without fraud directly and on their face for the benefit of the wife and payable to her, are not to be held fraudulent as to creditors." The law was, therefore, held to be that the assignment of a policy of insurance by an insolvent debtor for the benefit of his family was, in effect, like the assignment of any chose in action, a transgression of the statute of Elizabeth, and was fraudulent and void per se as to creditors, but that policies of insurance in which the wife and presumably other members of the family were the direct beneficiaries, effected without fraud, were not to be so held.

The act of 1868 was, therefore, simply declaratory of the law as it then stood, so far as related to policies of life insurance or annuities upon the life of any person which might thereafter mature, and which had been or should be taken out directly for the benefit of wife or children or any relative dependent upon such person, but it provided further, contrary to the doctrine of Elliot's Executors, supra, that such policies, bona fide assigned to the wife or children or any relative dependent upon such person, should be vested in such wife or children or other relative

full and clear from all claims of the creditors of such person. The effect of this provision of the law was to relieve such an assignment from its being per se an offense against the statute of 13th Elizabeth, and it was made lawful, therefore, for a man indebted or in insolvent circumstances to provide for his wife, children or dependent relatives by the assignment of policies of insurance as he might have done previously by taking out such policies for the direct benefit of such persons, the only difference being that in the one case the bona fides of the transaction could not be inquired into, and in the other it could be made the subject of inquiry.

It follows, of course, that husband or father or son might provide for those dependent upon him by the assignment of policies of insurance in which he was the beneficiary and, if such provision were made in good faith, it is not essential to the bona fides of such a transaction that full consideration should be paid therefor. The duty of providing for the person to whom the assignment was made would of itself be sufficient inducement and consideration therefor, but whether the transaction was made in good faith or not would, of course, be always a question for a jury. Entering into the consideration of that question, although not decisive of it, would be the fact of insolvency, the relation of the parties and their relative financial condition, the ability of the assignor to provide during life for the support of those dependent upon him, and the inability of the assignees to provide such support for themselves—these and kindred questions would, of course, enter into the main question of the bona fides of the transaction, and would be properly the subject of inquiry by the jury. But it is the undoubted province of the jury to determine them, and in their determination to reach a conclusion as to the validity or good faith of the assignment. The court below, therefore, was in error in affirming the plaintiff's point and holding, in effect, that, because the father was insolvent, he could not be indebted to the son, as claimed by the defendant, and that there was, therefore, no good and valid consideration for the assignment.

If the father, when the assignment was made, was in good health and able to provide for himself, and if, as the plaintiff offered to show in rebuttal for another purpose, the defendant was a weakly, sickly young man and not known to have done

any considerable amount of manual labor, there might have been a perfectly good consideration for the assignment, without the payment of money or any indebtedness on the part of the father to the son, and the assignment might have been good under the act of 1868, if the jury would find that for the reason stated the assignment had been bona fide made.

What has been said sufficiently disposes of this case, without taking up the assignments of error seriatim and in detail. As in other cases, it is incumbent upon the party alleging fraud to prove the same by clear and satisfactory evidence, either by direct proof or by facts, sufficient to warrant a presumption of its existence, clearly proved: Jones v. Lewis, 148 Pa. 234.

It is also to be said that " upon the trial of an issue involving questions of fraud, great liberality should be allowed in the admission of evidence, that the jury may be able to determine from all the circumstances whether the transaction was fraudulent or not:" Reinhard v. Keenbartz, 6 Watts, 93. But, in Stauffer v. Young, 39 Pa. 455, the reason of this ruling was fully and clearly stated: " The meaning of the maxim that great liberality of evidence is to be allowed in the trial of questions of fraud is that every circumstance in the condition and relation of the parties, and every act and declaration of the person charged with the fraud shall be competent evidence if, in the opinion of the judicial mind, it bears such a relation to the transaction under investigation as in its nature is calculated to persuade the jury that the allegation of fraud is or is not well founded:" Glessner v. Patterson, 164 Pa. 224.

The question involved in this case was undoubtedly one for the jury, and should have been submitted to them under proper instructions as to what constituted good faith in the assignment of the policies under which the defendant claimed the fund in court, to try the title to which the feigned issue was framed.

Judgment reversed and a new venire awarded.