# Slike, Appellant, *v.* Sandrock.

*Lease—Oil and gas lease—Alteration of instrument—Deed—Evidence—Fraud.*

1. In an action to recover for gas taken from a well on the plaintiff's premises and used on other properties for drilling wells, the case is for the jury, where it appears that the plaintiff executed in duplicate a lease for a well on his own premises to the defendant, that the copy which he retained contained a clause which provided that the defendant "shall have sufficient gas for drilling and all operating purposes on this, and a joining lease free of charge;" that the copy delivered to the defendant and recorded by him showed an addition of the letter "e" to the word "this," and the letter "s" to the word "lease"; that it was intended that both papers should be identical; and that both plaintiff and his son testified that the plaintiff had refused to sign a lease giving the defendant gas for use on adjoining leases, but had agreed to give him "gas on a joining lease."

2. The meaning of the maxim that great liberality of evidence is to be allowed in the trial of questions of fraud, is that every circumstance in the condition and relation of the parties, and every act and declaration of the person charged with the fraud shall be competent evidence if, in the opinion of the judicial mind, it bears such a relation to the transaction under investigation as in its nature is calculated to persuade the jury that the allegation of fraud is or is not well founded.

Argued May 5, 1913. Appeal, No. 121, April T., 1912, by plaintiff, from order of C. P. Clarion Co., May T., 1910, No. 212, refusing to take off compulsory nonsuit in case of George Slike v. J. F. Sandrock. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit for natural gas. Before WILSON, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order refusing to take off nonsuit.

*G. G. Sloan,* with him *J. T. Reinsel,* for appellant.— We contend that in this case the plaintiff should have

only been obliged to offer his duplicate copy of the contract. Then if the defendant, who is now seeking an advantage from the change or difference in the wording of the papers, wished to contradict the same and its terms, he having the same in his possession could do so: International Harvester Co. v. Elfstrom, 101 Minn. 343 (112 N. W. Repr. 252), 12 L. R. A. (N. S.) 343.

The admixture of oral and written testimony draws the whole to the jury: Kendig v. Roberts, 187 Pa. 339; Chicago Cottage Organ Co. v. McManigal, 8 Pa. Superior Ct. 632.

Evidence tending to show fraud should always, in the event of a conflict, be submitted to the jury: Landis v. Neff, 9 Atl. Repr. 926.

The question of fraud is always a question for the jury: Loucheim v. Henszey, 77 Pa. 305.

*F. J. Maffett,* of *Maffett & Rimer,* for appellee, cited: Stauffer v. Young, 39 Pa. 455; Glessner v. Patterson, 164 Pa. 224; Mehaffey v. Ferguson, 156 Pa. 156.

OPINION BY ORLADY J., October 13, 1913:

The defendant, who was an oil operator, secured from the plaintiff, a landowner, a lease of his farm "for the purpose and with the exclusive right of drilling and operating for petroleum oil and gas on a described tract of land." Duplicate leases were written by Sandrock at the home of the plaintiff. One was read aloud by Sandrock while the plaintiff compared the wording with the other, which he held in his hand. The plaintiff expressed his assent to the terms and conditions of the one he held, when he signed it, and gave it to Sandrock, who signed the other one and gave it to the plaintiff. Subsequently the one given to Sandrock was duly acknowledged before a justice of the peace by the plaintiff and was placed on record by Sandrock.

This action in assumpsit was brought to recover for gas taken from a well on the plaintiff's premises, and used on

other properties for drilling wells thereon, for which it was alleged then was due the plaintiff under the terms of the lease at the rate of $100 per well per annum. The important clause from which this controversy arises is in the following words: "Second party shall have sufficient gas for drilling and all operating purposes on this and a joining lease free of charge,"—this being the wording of the lease signed by Sandrock and delivered to the plaintiff when they were executed. and is the one attached to the plaintiff's statement.

Before trial, however, the plaintiff filed an amended statement, averring, "That the lease, a copy of which is hereto attached and made part hereof is recorded in Lease and Agreement Book, vol. 23, pp. 146–147, was fraudulently altered and changed by adding the letter 'e' to the word 'this' and also adding the letter 's' to the word 'lease' in the last line of that part of said lease that is written by a pen; and that the same was so fraudulently changed and altered previous to the recording of the said lease, but after signing of the same by the plaintiff."

On the trial of the case, the defendant was called as if for cross-examination and testified, that both leases were written by him and were intended to be exact duplicates of the other as he believed them to be, and that the one signed by Slike had not been changed or altered in any particular, and that the work done on the ground had been done and the gas used in exact accordance with its terms. The plaintiff testified that the lease he had read over and signed did not have in it the letters "e" and "s" as quoted above. That Sandrock desired to have a lease to cover gas used in developing adjoining properties, and he had positively refused to give such a lease, but did consent to allow the use of gas for a joining lease. In this he was corroborated by his son who was present at the conference and the execution of the papers, who testified, "I heard him (father) say that he wouldn't give him gas on adjoining leases, but would

give him gas on a joining lease," and that Mr. Sandrock told him afterwards that "They, the leases, were both alike the day they were wrote." The two leases were received in evidence and inspection of the papers showed that they were different in a substantial matter. The letters "e" and "s" were distinctly placed in the one where they added materially to the force of the words to which they were attached, while they were totally lacking in the other.

The learned trial judge granted a motion for a compulsory nonsuit for the reason that there was not sufficient evidence to show that a material alteration had been made to the lease after its execution. On this appeal the only question to be here decided is, whether there was sufficient evidence offered to submit the case to the jury.

These two papers are to be considered as duplicates or counterparts of the other—each to be the same in all respects as the other, from which it is to be indistinguishable in its essence and operation—and each to be considered an original. The parties so regarded them and so declared on the witness stand. It is conceded that there is an important, material change and contradiction between them, in regard to the clause in question, and its materiality is shown by the fact that Sandrock drilled three wells on adjoining farms by gas used from the well on the Slike property, and claimed the right to so use this gas, without charge under the lease he put on record as signed by Slike. It is also apparent that the important variation is in the lease in the possession of Sandrock, and he plants his defense in this action on the letters of the lease given to him. When he stands on this version of the contract in contradiction of the lease he signed and gave to the plaintiff, he should satisfy a jury that the added letters were intended by the parties to be where they are in the lease he placed on record. If the letters "e" and "s" were innocently and inadvertently added it would not

be binding on the parties, and if wrongfully appended, it should not be allowed to become operative. It is also apparent that the added letters could not have been set in by Slike, as the paper was never in his possession, and they were largely injurious to him, as well as contrary to his expressed declaration of what he would lease. It is conceded that the parties understood each other, and intended to reduce that understanding to writing, but we have the manifest contradiction in the two recitals of their intentions.

This is not a case of varying the terms of a contract but of determining what the contract really was, and in such a case where the acts and declarations accompanying the fact in controversy tend to illustrate or explain it, they are treated not as hearsay but as original evidence, in other words, as part of the res gestæ.

The amended statement averred that the lease placed on record by Sandrock, as signed by Slike, had been fraudulently altered and changed by the addition of the mentioned letters, and the proof adduced was in support of that averment.

Proof of motive for unfairness corroborates the proof of unfairness and renders it more credible: Hazleton Coal Co. v. Coal Co., 57 Pa. 301. The words used in an agreement are to be applied to the subject-matter about which the parties are contracting at the time; where the meaning of a paper cannot be ascertained without reference to extrinsic facts which are doubtful or disputed, it must be referred to the jury, but where such facts are undisputed, the construction is for the court: Edelman v. Yeakel, 27 Pa. 26. Parol evidence of the understanding of the parties in respect to the construction of a written instrument may be given to explain that which would otherwise be ambiguous, and for this purpose evidence of declarations of a party made previous to or at the time of the signing of the contract or of the circumstances surrounding its execution is admissible: Easton Power Co. v. Supply Co., 22 Pa. Superior Ct.

538. The two writings were but evidence of the contract between these parties, and in the confusing shape it was presented it was proper to have a jury decide what the real contract was, and who caused the contradiction between the papers.

Fraud was the basis of the action and in its investigation great latitude is permitted in the admission of evidence: Van Sciver Co. v. McPherson, 199 Pa. 331. The meaning of the maxim that great liberality of evidence is to be allowed in the trial of questions of fraud, is that every circumstance in the condition and relation of the parties, and every act and declaration of the person charged with the fraud shall be competent evidence if, in the opinion of the judicial mind, it bears such a relation to the transaction under investigation as in its nature is calculated to persuade the jury that the allegation of fraud is or is not well founded: Glessner v. Patterson, 164 Pa. 224. The evidence was properly admitted, and should have been submitted to the jury under proper instructions. The controlling facts were few and not in serious dispute, deductions from these facts may be accurately drawn to establish the important point in issue as conclusively as if ascertained by direct positive evidence.

The judgment is reversed and a venire facias de novo awarded.