462 A.2d 1340

**COMMONWEALTH of Pennsylvania**

v.

**Michael E. FULTZ, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Michael E. FULTZ, Appellant.**

Superior Court of Pennsylvania.

Submitted March 8, 1983.

Filed July 1, 1983.

Alan Ellis, State College, for appellant.

William A. Helm, District Attorney, Lewistown, for Commonwealth, appellee.

Before CERCONE, President Judge, and WICKERSHAM and MONTEMURO, JJ.

CERCONE, President Judge:

Appellant Michael Fultz here appeals from the judgment of sentence imposed by the Court of Common Pleas of Mifflin County on March 11, 1981 following his entry of a guilty plea to the charge of Corruption of a Minor, and from the order entered by that court on April 27, 1981 denying his motion to withdraw his guilty plea. For the reasons advanced *infra*, we reverse the order of the lower court, vacate the judgment of sentence, and remand the case for a new trial.

On November 20, 1980, pursuant to a plea bargain, appellant pled guilty to Count II (corruption of a minor) of a three count information charging him with attempted involuntary deviate sexual intercourse,[1] corruption of a minor,[2]

1. 18 Pa.C.S.A. § 901.
2. 18 Pa.C.S.A. § 6301.

and indecent exposure.[3] These charges stemmed from an incident which occurred allegedly on August 23, 1980 in a wooded area of Derry Township wherein appellant exposed his genitals to a six (6) year old boy and attempted to have the child perform fellatio upon him. Following appellant's entry of the plea, the lower court sentenced him to a term of incarceration of not less than ten (10) months nor more than twenty-three (23) months in the Mifflin County Jail, and ordered him to pay a fine of three hundred dollars ($300.00) as well as the costs of his prosecution.

Appellant, previously represented by the Office of the Public Defender, then retained private counsel who, pursuant to Pa.R.Crim.Pro. 321 and 1410, filed timely motions challenging the validity of the guilty plea and requesting a modification of the sentence. The lower court, by order dated April 17, 1981, denied those motions.

Instantly, appellant argues, *inter alia*,[4] that his plea of guilty to the charge of corruption of a minor was unknowing, involuntary, and hence invalid in that it was entered on the advice of counsel who himself was ineffective as a result of his failure to challenge the competency of the complainant, a six year old child. We agree.

---

**3.** 18 Pa.C.S.A. § 3127.

**4.** In view of our disposition as to appellant's first assignment of error, we need not address the three remaining issues, phrased by appellant in his brief as follows:

II. THE GUILTY PLEA COLLOQUY WAS DEFECTIVE IN THAT THE JUDGE FAILED TO ELICIT FROM APPELLANT A FACTUAL BASIS FOR THE PLEA: THE TERMS OF THE PLEA AGREEMENT WERE NOT STATED ON THE RECORD IN OPEN COURT IN THE PRESENCE OF THE DEFENDANT: AND DEFENDANT WAS NOT ADVISED OF THE LIMITED APPELLATE REVIEW FOLLOWING A GUILTY PLEA.

III. THE SENTENCING JUDGE FAILED TO ADEQUATELY STATE ON THE RECORD THE REASONS FOR IMPOSING A SENTENCE OF TOTAL CONFINEMENT ON AN 18 YEAR OLD FIRST OFFENDER.

IV. APPELLANT'S SENTENCING COUNSEL WAS INEFFECTIVE IN FAILING TO EXPLORE SENTENCING ALTERNATIVES PRIOR TO SENTENCING.

██  The entry of a plea of guilty invariably results in the waiver of all grounds of appeal, with the exceptions of challenges to the voluntariness of the plea and the jurisdiction of the sentencing court. *Commonwealth v. Chumley,* 482 Pa. 626, 394 A.2d 497 (1978); *Commonwealth v. Greer,* 475 Pa. 646, 326 A.2d 338 (1974). Consequently, an assertion of ineffective assistance of counsel following upon the entry of a guilty plea will afford a basis for relief only if there can be demonstrated some causal nexus between the alleged ineffectiveness and appellant's entry of what amounts to an unknowing or involuntary plea. *Commonwealth v. Chumley, supra; Commonwealth v. Albertson,* 269 Pa.Superior 505, 410 A.2d 815 (1980); *Commonwealth v. Jones,* 477 Pa. 266, 383 A.2d 926 (1978). In measuring the adequacy of counsel's representation of his client, we are guided by the test employed by our Supreme Court in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967), wherein it ruled:

> [C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis. (emphasis in original).

*Id.,* 427 Pa. at 604–605, 235 A.2d at 352–353.

Upon a thorough review of the record, we conclude that the decision of appellant's plea counsel to forego an investigation into the competency of the Commonwealth's sole witness to the alleged crime, a boy six years of age, enjoyed no reasonable basis.

At the hearing ordered by the lower court on appellant's motion to withdraw his guilty plea, appellant's plea and sentence counsel, Public Defender John B. Schaner, testified that his own preparation of the case consisted of

conducting two interviews with appellant's parents and one interview with appellant himself, and of reviewing the transcript of the preliminary hearing which consumed approximately twenty typewritten pages. Mr. Schaner stated that he interviewed none of the witnesses who testified at the preliminary hearing, including the six year old prosecutor.[5] Responding to a question posed on cross-examination by appellant's newly retained counsel, Mr. Schaner admitted that he regarded appellant's case as "a loser." In explaining his recommendation that appellant plead guilty to the morals violation in return for a dismissal of the charges of indecent exposure and involuntary deviate sexual intercourse, Mr. Schaner commented in the following manner:

> I read how the victim had testified before and I evaluated the problem of that victim's testimony as a matter of what to expect if a jury were to observe that six year old boy saying the same things with the additional experience of the Preliminary Hearing in preparation for trial, saying the same things that he had said at the Preliminary Hearing.
>
> .  .  .  .  .
>
> I didn't want to make him an object of loathing in the community merely for the sake of exposing him to a public trial when I believed that the outcome was to be a conviction based on the testimony of a very appealing, sympathetic type of victim.

Appellant himself appeared at the hearing conducted pursuant to his motion to withdraw his guilty plea. In regard to possible defenses which Mr. Schaner may have discussed with appellant, this exchange occurred between appellant and his counsel, Mr. Newman:

BY MR. NEWMAN:

Q. Did you ever discuss your case with him?

A. Well, as far as the case, no,—well, in the courtroom, the first time, you know, but as far as going over the

---

5. In fact, the record discloses that Mr. Schaner's office did not represent appellant during the preliminary hearing. Consequently, Mr. Schaner did not himself take part in or even attend that proceeding.

case, no, but he called and talked to us on the phone for about an hour, but just getting background information, my school records, what my life was like, that type, but never discussed the case on the phone.

Q. Your lawyer, Mr. Schaner, did he ever discuss any defenses with you?

A. No.

Q. Did he ever bring up the issue of incompetency of the juvenile witness, the fact that a juvenile witness is presumed to be incompetent? A witness under the age of 14 and in fact a witness under seven may not be competent at all to testify. Did he ever suggest any of that to you, any of that law?

A. No, he never said that. He kind of like put it in a different manner. He said because of the kid's age, it was against me and that there was no way I could beat this case because of this kid's age.

Q. Fine. Did he ever in any way tell you that perhaps that would be a defense for you or a strategy attacking the prosecuting witness's competency because of his younger age, did your lawyer ever tell you that?

A. No, he never told me that.

Thus, it appears from the record that Mr. Schaner did not discuss with appellant the possibility of challenging the competency of the small boy but instead led appellant to believe that the only proper tactic was to plead guilty to the lesser offense and hope for a more lenient sentence. Moreover, Mr. Schaner made no attempt to raise the issue of the child's competency before the lower court.

■■■■ At the outset, we note that the competency of a prospective witness is a matter left entirely to the discretion of the trial judge whose ruling will not be reversed in the absence of a manifest abuse of discretion. *Commonwealth v. Baker*, 466 Pa. 479, 353 A.2d 454 (1976); *Commonwealth v. Payton*, 258 Pa.Superior 140, 392 A.2d 723 (1978); *Commonwealth v. Mangello*, 250 Pa.Superior 202, 378 A.2d 897

(1977).[6] The appropriate competency investigation should determine whether the witness: (1) has the capacity to observe or perceive the occurrence with substantial degree of accuracy; (2) has the ability to remember the event which was observed or perceived; (3) has the ability to understand questions and to communicate intelligent answers about the occurrence, and; (4) has the consciousness of the duty to speak the truth. *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978); *Commonwealth v. Hall*, 267 Pa.Superior 204, 406 A.2d 765 (1979); *Commonwealth v. Mazzoccoli*, 475 Pa. 408, 380 A.2d 786 (1977); *Commonwealth v. Baker, supra.* Although there is no doubt but that a witness is presumed to be competent, and that the objecting party carries the burden of proving otherwise, it is equally certain that where the witness is under fourteen years of age, "there must be a searching judicial inquiry as to mental capacity..." *Commonwealth v. Short*, 278 Pa.Superior 581, 586, 420 A.2d 694, 696 (1980). It is nonetheless true, however, that as in cases involving the competency of adult witnesses, the trial judge enjoys considerable discretion in ruling on the competency of an infant witness. *Id.* Indeed, as the Supreme Court made plain in *Mazzoccoli:*

> The question of competency of persons said to be mentally immature due to infancy is to be determined in the discretion of the trial judge after an inquiry as to mental maturity once the fact of infancy appears on the record or is obvious to the judge. *Commonwealth v. Mazzoccoli*, 475 Pa. at 410, 380 A.2d at 787 *quoting Rosche v. McCoy*, 397 Pa. 615, 620, 156 A.2d 307, 310 (1959).

It is clear, however, that our disposition of the instant appeal in no way implicates those principles discussed above

6. In fact, as we observed in *Mangello*, Professor Wigmore is of the opinion that appellate courts should never reverse such rulings, but, rather, should accept the testimony on its face and entrust the problem of credibility to the finder of fact. *See Commonwealth v. Mangello, supra*, 250 Pa.Superior at 205–206, 378 A.2d at 898–99; and VI Wigmore on Evidence § 1821 (Rev. ed. 1976).

which relate to the amount of discretion enjoyed by trial judges in ruling on the competency of witnesses, since it appears here that the lower court was never called upon to resolve the question of the infant prosecutor's competency. Rather, our task now is to ascertain whether some reasonable basis can be attributed to Mr. Schaner's failure to challenge by any means the competency of the six year old boy, or to even interview the prosecutor since Mr. Schaner himself did not attend the preliminary hearing at which the boy gave his account of the events leading to appellant's arrest.

We ruled in *Commonwealth v. Gainor*, 289 Pa.Superior 190, 432 A.2d 1116 (1981), that " 'defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner.' " *Id.*, 289 Pa.Superior at 198, 432 A.2d at 1120, *quoting United States v. Williams*, 615 F.2d 585, 594 (3d Cir.1980), and *Beasely v. United States*, 491 F.2d 687, 696 (6th Cir.1974). Consistent with that holding, we invalidated Gainor's guilty plea as a product of the ineffective assistance of counsel who failed to explore the possibility of a defense of insanity. Gainor was charged with aggravated assault on a parish priest. Following the assault, Gainor, who had a history of mental illness, was committed to Mayview State Hospital where a psychological profile was prepared. The report characterized Gainor as a borderline psychotic and paranoid schizophrenic who maintained only a tenuous contact with reality and whose prognosis was poor. Despite these facts, Gainor's counsel nevertheless testified at a P.C.H.A. hearing that he believed that insanity "was not an avenue to explore or proceed under." The basis of his opinion was his belief that the defendant would have fared poorly in a jury trial given the large Catholic population of the community. We rejected the Commonwealth's argument that a jury trial and insanity defense would have incurred the wrath of a potentially hostile jury, stating that that contention was irrelevant insofar as

the dereliction asserted here is the decision not to explore the possibility of an insanity defense, not the decision to

refrain from asserting it. It is possible that, after adequate investigation, counsel could properly have recommended to Appellant that the best strategy to pursue was to enter a guilty plea in the hope of obtaining a lenient sentence.

*Commonwealth v. Gainor,* 289 Pa.Superior. at 196–197, 432 A.2d at 1120.

We noted further that

The mere possibility that an insanity defense could not have been successfully asserted does not excuse counsel's failure to explore the merits of such a defense. Nor is it a justification for counsel making decisions without discussing them with Appellant. The record in the instant case unequivocally demonstrates that the information available to counsel imposed upon him a clear duty to investigate and to advise Appellant fully of the merits of an insanity defense. There is no reasonable basis for counsel's disregard of this duty. *Id.*

Moreover, as we observed in *Gainor,* appellant could have waived his right to a jury trial pursuant to Pa.R. Crim.P. 1101. As a consequence, we here likewise reject the argument of appellant's plea and sentence counsel that he recommended that appellant plead guilty in order to escape the possible unpleasant consequences of facing a hostile jury.

We also note our disapproval of the decision made by appellant's counsel to enter a plea of guilty to the corruption charge without interviewing so much as a single witness who testified at the preliminary hearing, particularly when Mr. Schaner did not attend the hearing. Mr. Schaner later explained his actions at the hearing on appellant's motion to withdraw his plea, saying that upon reviewing the twenty pages of the preliminary hearing transcript, he concluded that interviewing the prosecutor would not have proved beneficial, given the manner in which the boy testified at the preliminary hearing. The Supreme Court denounced such a course of conduct in *Commonwealth v.*

*Mabie,* 467 Pa. 464, 359 A.2d 369 (1976) where it found trial counsel ineffective (a) in dismissing the defense of self-defense without conducting a proper inquiry into the facts of the case; and (b) in deciding not to interview eyewitnesses because the witnesses appeared to be hostile. The Supreme Court granted Mabie a new trial and, with regard to counsel's failure to interview witnesses, stated the following:

... counsel decided not to interview eyewitnesses to the incident based only on the testimony of one witness at the preliminary hearing and the conversation with Mabie. From the above information, it is counsel's position that these witnesses were so hostile that to call them to testify would invite a conviction for murder of the first degree. However hostile these witnesses may have appeared to be, there is no basis for the decision neither to interview them nor to attempt to do so. While hostile witnesses at trial may have presented added difficulties to appellant's case, the question here is the decision not to interview them, not the decision to refrain from calling them at trial. Accordingly, there was no danger of hostile witnesses inflaming a jury during an interview to determine what each saw and their degree of potential hostility. Rather, the value of the interview is to inform counsel of the facts of the case so that he may formulate strategy. Perhaps, after questioning these witnesses, counsel may have concluded that the best strategy was not to call them due to hostility and, as a matter of strategy, that decision on counsel's part would not be subject to a claim of ineffective assistance of counsel. *Commonwealth v. Owens,* 454 Pa. 268, 312 A.2d 378 (1973). However, no such claim of strategy can be attached to a decision not to interview or make an attempt to interview eyewitnesses prior to trial. Therefore, no reasonable basis designed to effectuate Mabie's interest can be attributed to counsel's failure to question these witnesses or at least make a reasonable attempt to do so.

*Id.,* 467 Pa. at 474–75, 359 A.2d at 374–75.

Finally, we perceive no reasonable basis for Mr. Schaner's failure to request a competency hearing, to place on the

record an objection to the minor's competency, or to discuss the issue of his competency with appellant in order to afford the latter with adequate information upon which he could base his plea. The Supreme Court has long regarded a challenge to a witness' competency as a tactic of arguable merit. *See*, e.g. *Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1976); and *Commonwealth v. Mangini*, 493 Pa. 203, 425 A.2d 734 (1981). In *Mangini, supra,* the defendant had been convicted of murder on the strength of the testimony of a prosecution witness who had been diagnosed as a paranoid schizophrenic and who was forced to take daily doses of an antipsychotic drug which produced blurred vision. Mangini's trial counsel posed no objections to the competency of the witness and made no attempt to test the witness' competency in a hearing. Although counsel's omissions were never raised on direct appeal, we addressed them following the denial of Mangini's petition filed pursuant to the Post Conviction Hearing Act (PCHA). Because we regarded counsel's failure to challenge the competency of the prosecution's key witness as conduct depriving Mangini of the effective assistance of counsel, we reversed Mangini's conviction and ordered a new trial. Prior to retrial, Mangini took an interlocutory appeal challenging the lower court's granting of the Commonwealth's motion to adopt the prior testimony of the witness who had earlier been determined incompetent to testify at the upcoming trial. In disposing of that interlocutory appeal, the Supreme Court concurred in our view that the PCHA court erred in regarding counsel's behavior as "reasonable." Justice Larsen, speaking for the Court, quoted extensively from our memorandum opinion:

> Initially, it must be noted that an objection to the competency of the witness would at least have been of arguable merit under prior competency cases of the Supreme Court. *See Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974) and *Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978). Counsel could have raised this objection, or requested a competency hearing, with-

out prejudice to his ability to pursue his other alternative, i.e. attempting to discredit the witness on cross.

This was *not* a case where counsel had two alternatives that were contradictory or mutually exclusive. In such a case, counsel must necessarily choose one or the other alternative. This case presents, instead, the situation where counsel has two alternatives, *both* of which are available to him. Counsel could have attempted to [first] disqualify the witness. (Indeed, the PCHA transcript reveals that counsel admitted he did not want Crossley to testify at all—this admission factually contradicts the PCHA court's supposed "reasonable basis."). If he succeeded in this attempt, there would be no need to pursue the less certain method of discrediting the witness on cross. If he failed in the attempt, he still could fall back on cross-examination. There was no reason offered at the PCHA hearing, nor in the opinion of the PCHA court, as to why that first [obviously more desirable] alternative was ignored other than counsel felt the second alternative would work. There is no reasonable basis under these circumstances, for deliberately eschewing one weapon (out of two available) when both can be used. mem. opinion at 5–6.[4]

---

[4] It is clear from this passage that, while the Superior Court sometimes referred to counsel's "alternatives", the two strategies examined were not "alternatives" at all. Rather, they were distinct and independent tactics.

*Id.*, 493 Pa. at 209, 425 A.2d at 737. (Emphasis in original).

■ Because we find no reasonable basis for Mr. Schaner's failure to interview witnesses or investigate and discuss with appellant the possibility of raising the question of the incompetency of the infant witness/prosecutor, we find that appellant did not knowingly and voluntarily enter his plea of guilty since such plea was grounded upon the advice of ineffective counsel. Consequently, the order of the lower court is reversed, the judgment of sentence vacated, and the case remanded for a new trial. We do not retain jurisdiction.