552 A.2d 1064

**COMMONWEALTH of Pennsylvania**

v.

**Jonathan ANDERSON, Appellant.**

Superior Court of Pennsylvania.

Filed Dec. 15, 1988.

Reargument Denied Feb. 3, 1989.

2

4

Michael J. Rostolsky, Lancaster, for appellant.

Before CAVANAUGH, OLSZEWSKI and MELINSON, JJ.

MELINSON, Judge:

This is an appeal from a conviction and judgment of sentence in the Court of Common Pleas of Lancaster County. We affirm.

On May 8, 1986, following a trial by jury, Jonathan Anderson, the appellant, was found guilty of indecent assault and conspiracy to commit rape. The evidence presented at trial revealed that on the afternoon of June 16, 1985, James Vinson visited Anderson for approximately fifteen minutes. Vinson then left Anderson's apartment. On his way home he encountered Sandra Lewis as she left a laundromat. Vinson offered to take her home, but instead, he escorted her to Anderson's apartment. Ms. Lewis, age 39 at the time of trial, is a mentally retarded woman with the estimated intellectual age of a six year old child. Anderson testified that he recognized Lewis from the laundromat, but had never spoken to her and did not know of her mental retardation. However, he told the police officer who investigated the crime that he knew as soon as Vinson appeared with Sandra Lewis that the acts about to transpire were wrong. Shortly after bringing Sandra Lewis into Anderson's apartment, Vinson had sexual intercourse with her. Anderson watched this act take place and heard Lewis protest. Immediately after Vinson was done, Anderson had sexual intercourse with Sandra Lewis. When Anderson had finished, he told Lewis to put on her clothes. Anderson then called a taxicab for Lewis.

After his conviction, Anderson filed timely post-trial motions. These motions were denied. Anderson was subsequently sentenced to concurrent terms of incarceration of twenty-seven to fifty-four months on the conspiracy charges, and one to two years on the indecent assault charges. Following the denial of Anderson's motion to modify his sentence, this appeal was taken in a timely fashion.

On appeal, Anderson raises five issues for our review: (1) Whether the trial court abused its discretion by ruling that the chief Commonwealth witness, Sandra Lewis, was competent to testify?
(2) Whether the trial court erred in permitting a Commonwealth witness to answer a hypothetical question, as well as seeking an answer which was the ultimate question of fact for the jury?
(3) Whether the trial court erred in permitting evidence of a photograph lineup to be introduced at trial?
(4) Whether there was insufficient evidence to support the jury's guilty verdict of conspiracy to commit rape?
(5) Was the sentence by the trial court excessive?

Initially, Anderson challenges the testimonial competency of Sandra Lewis. Prior to trial, the trial court conducted an inquiry into Ms. Lewis's testimonial competency. The court thereafter determined that she was competent to testify. Anderson argues that Sandra Lewis was unable to perceive the alleged occurrence with a substantial degree of accuracy, she did not remember what she saw, and that she was unable to understand questions or to communicate intelligent answers while on the witness stand.

█ Because a trial judge has a superior opportunity to assess the competency of a witness, an appellate court should virtually never reverse a competency ruling. *See Commonwealth v. Stohr*, 361 Pa.Super. 293, 522 A.2d 589 (1987). Thus, the determination of a witness's competency to testify will not be disturbed on appeal absent a clear abuse of discretion. *Commonwealth v. Gaerttner*, 335

Pa.Super. 203, 484 A.2d 92 (1984). However, we have articulated some guidelines that a trial court must follow before reaching a decision as to a witness's competence to testify.

▮▮▮▮ In general, the testimony of any person, regardless of his mental condition, is competent evidence, unless it contributes nothing at all because the witness is wholly untrustworthy. *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974). Thus, in Pennsylvania, witnesses are presumed competent to testify, and it is incumbent upon the party challenging the testimony to establish incompetence. *Commonwealth v. Stohr*, 361 Pa.Super. 293, 522 A.2d 589 (1987). Moreover, a trial court need not order an investigation of a witness's competency, unless the trial judge has some doubt about the witness's competency after having observed the witness. *Commonwealth v. Fulton*, 318 Pa. Super. 470, 465 A.2d 650 (1983).

▮▮▮▮ Different standards apply for the interpretation of the testimonial competency of children. This court has recently concluded that the presumption of competency remains for proposed child witnesses. *See Stohr*, 361 Pa. Super. at 296, 522 A.2d 589; *Commonwealth v. Fultz*, 316 Pa.Super. 260, 462 A.2d 1340 (1983); and *Commonwealth v. Short*, 278 Pa.Super. 581, 420 A.2d 694 (1980).[1] However,

1. We must note, however, that in the 1977 case of *Commonwealth v. Mangello*, 250 Pa.Super. 202, 378 A.2d 897 (1977), this court stated that: "when a child under the age of fourteen is called to testify, the presumption does not operate, and the competency of the infant-witness must be independently established." *Mangello*, 250 Pa.Super. at 204–205, 378 A.2d 897. Obviously, this contradicts the mandate that *all* witnesses are presumed competent to testify, as held by this court in *Stohr, Fultz,* and *Short*.

*Mangello* is also at odds with the Federal Rules of Evidence and with the opinions of leading commentators on the subject. *See* Fed.R.Evid. 601–605; McCormick, *Handbook of the Law of Evidence*, section 62 (3rd ed., E. Cleary 1984); Wigmore, *Evidence*, sections 501, 509 (2d ed., Chadbourn 1979); Weihofen, *Testimonial Competence and Credibility*, 34 Geo. Wash. L.Rev. 53 (1965). These commentators do not stop at the conclusion that the presumption of competence should remain for child witnesses, but instead, they argue that the testimony of the child witness should be uniformly permitted, giving the jury the opportunity to gauge the credibility of the testimony. Writes McCor-

8

children are "peculiarly susceptible to the world of make-believe and of suggestions." *Rosche v. McCoy*, 397 Pa. 615, 621, 156 A.2d 307, 310 (1959). Accordingly, the law of this Commonwealth is that when a proposed witness is under fourteen years of age there must be a searching judicial inquiry into his or her mental capacity before he or she can testify. *Stohr*, 361 Pa.Super. at 296, 522 A.2d 589. This competency investigation should determine whether the witness has the following:

> (1) capacity to observe or perceive the occurrence with a substantial degree of accuracy; (2) ability to remember the event which was observed or perceived; (3) ability to understand questions and to communicate intelligent answers about the occurrence, and (4) consciousness of the duty to speak the truth.

*Fultz*, 316 Pa.Super. at 267, 462 A.2d 1340; *see also: Commonwealth v. Penn*, 497 Pa. 232, 240, 439 A.2d 1154, 1158 (1982), *cert. denied Penn v. Pennsylvania*, 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982); *Commonwealth v. Trudell*, 371 Pa.Super. 353, 538 A.2d 53 (1988). With age, children acquire a greater command of language, develop better powers of observation and memory, and have a more acute comprehension of a responsibility to tell the truth. Thus, the inquiry into the child's competence to

mick, "[t]he major reason for disqualification of [child witnesses] to take the stand is the judge's distrust of a jury's ability to assay the words of a small child ... Conceding the jury's deficiencies, the remedy of excluding such a witness, who may be the only person available who knows the facts, seems inept and primitive. Though the tribunal is unskilled, and the testimony difficult to weigh, it is still better to let the evidence come in for what it is worth, with cautionary instructions." McCormick, *supra*, at 156.

Though we are not bound by the dictates of these authorities, their approach reflects a logical attempt to promote and facilitate the credibility-finding function of juries by allowing them the benefit of all relevant testimony. While we do not go so far, at bar, as to apply the approach the commentators suggest, we note the following: *Stohr, Fultz*, and *Short* are all more recent cases than *Mangello*, these three cases are in accordance with the general Pennsylvania proposition that all witnesses are presumed competent, and, finally, they more closely resemble the approach of the commentators and the Federal Rules than does *Mangello*. Accordingly, we find that *Mangello* is not a correct statement of the law with respect to this issue.

testify must be more searching in proportion to the proposed witness's chronological immaturity. *Rosche*, 397 Pa. at 621, 156 A.2d 307; *Stohr*, 361 Pa.Super. at 296, 522 A.2d 589.

We hold that the competency considerations applicable to a child witness are also applicable to a retarded adult with the mental capacity of a child. While we realize that no precise comparison can be made linking the mental capacity of a child who is functioning age-appropriately with the mental capacity of a retarded adult who is not, we find the criteria for determining the testimonial competence of a proposed child witness to be helpful in determining the testimonial competence of a mentally retarded proposed witness.

Initially, we note that the determination of the trial court regarding the testimonial competency of a mentally retarded person will not be disturbed absent a clear abuse of discretion. The trial court, however, shall follow certain guidelines before making its competency determination. If the trial court is presented with credible evidence that a proposed witness is or might be mentally retarded, the court shall conduct a judicial inquiry to determine the testimonial competency of the proposed witness. The factors the judge shall consider in making his determination are the same factors, enumerated previously herein, used in determining the competency of a child witness.[2] *See Penn*,

2. We recognize the dictum of this court in *Commonwealth v. Trudell,* 371 Pa.Super. 353, 538 A.2d 53 (1988), relating to the testimonial competency of "mentally disabled" individuals. There, in evaluating the previously-discussed criteria for testimonial competency, the court asserted: "[w]here the court is assessing the competency of a mentally disabled person, *the main concern* is understandably whether the witness has the mental ability to understand what he observes, remember it and accurately relate it, since many mental disorders may well affect these mental functions." *Trudell*, 371 Pa.Super. at 361, 538 A.2d 53 (emphasis added). In reviewing this matter, however, we note that the majority of Pennsylvania case law does not support the proposition that one criterion is more important than others when evaluating testimonial competency. *See: Penn*, 497 Pa. 232, 439 A.2d 1154, *Commonwealth v. Goldblum*, 498 Pa. 455, 447 A.2d 234 (1982), *Rosche*, 397 Pa. 615, 156 A.2d 307, *Stohr*, 361 Pa.Super. 293, 522 A.2d 589, *Fultz*, 316 Pa.Super. 260, 462 A.2d 1340, and *Short*, 278 Pa.Super.

497 Pa. at 232, 439 A.2d 1154. It would be a grave injustice to deny a retarded victim of a crime his or her right to testify against the alleged perpetrator of the crime simply because of the victim's retardation. Accordingly, because all witnesses, including child witnesses, are presumed competent to testify, the judge shall presume the mentally retarded proposed witness competent to testify when conducting his inquiry. To hold otherwise would be to countermand the general presumption of testimonial competency established in Pennsylvania, and would be unfair to retarded citizens who would be subjected to the resulting double standard of testimonial competency. *See: Ware,* 459 Pa. at 351–52, 329 A.2d 258; *Stohr,* 361 Pa.Super. at 296, 522 A.2d 589; *see also United States v. Odom,* 736 F.2d 104 (4th Cir.1984) *citing Commonwealth v. Pronkoskie,* 477 Pa. 132, 383 A.2d 858 (1978).

Furthermore, even though we are not convinced that the mental age of a mentally retarded person can always be determined with exactitude, the judge shall be permitted to receive evidence of estimated mental age to assist him in making a determination concerning the degree of retardation of the proposed witness. Just as the judicial inquiry into the competence of a proposed child witness must be more searching in proportion to the child's chrono-

581, 420 A.2d 694. (*Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258 (1974), is the lone Pennsylvania case that gives greater emphasis to one of the criteria over the others. There, the Court stated, "[t]he core of the competency test is ability to give 'a correct account of the matters which he has seen or heard.' " *Ware,* 459 Pa. at 353, 329 A.2d 258 [citations omitted]. No Pennsylvania Supreme or Superior Court case, either before or since *Ware,* has given priority to any of the testimonial criteria). Furthermore, the phrase "mentally disabled persons" encompasses too broad a grouping of individuals. Disability is defined by Dorland's Medical Dictionary as "a lack of ability to function normally, [either] physically or mentally ..." DORLAND'S MEDICAL DICTIONARY 480 (27th ed. 1988). Clearly, the term "mentally disabled persons" includes both mentally ill and mentally retarded individuals. We hold that the instant case, in which we do not place more emphasis on one competency criterion over another, and in which we deal exclusively with the testimonial competency of mentally retarded individuals, will provide the guidelines that should be utilized for evaluating the testimonial competency of mentally retarded individuals.

logical immaturity, the judicial inquiry into the testimonial competence of a mentally retarded individual must be more exhaustive in proportion to the proposed witness's degree of mental retardation. Only after a trial court has followed these guidelines in making its decision as to the proposed witness's competency, shall we apply an abuse of discretion standard to its determination.

At bar, the trial court conducted a pre-trial hearing to inquire into the testimonial competence of Sandra Lewis. At the hearing, Ms. Lewis was subject to direct and cross-examination by counsel for both parties. The questions posed by counsel probed the criteria necessary for a determination of testimonial competence. At the hearing, Ms. Lewis testified that she knew the difference between the truth and a lie, and that she would "go to hell" if she did not tell the truth. After the inquiry, the court determined that she was competent to testify.

At trial, Ms. Lewis did experience some difficulty in understanding the questions asked by the attorneys, yet, she unambiguously identified Anderson as one of the perpetrators of the crime, and she testified that the man who brought her to the apartment was named Vinson. Furthermore, she was lucid in her testimony that Vinson took her clothes off, that both men "messed with her," and that she called for help during the ordeal. Based on the foregoing, we are satisfied that the trial court conducted its inquiry into the testimonial competence of Sandra Lewis in a thorough and conscientious manner, and that she was, indeed, competent to testify to the events which gave rise to this action. Accordingly, we find that the trial court did not abuse its discretion in allowing the testimony of Sandra Lewis.

Anderson next contends that the trial court erred by permitting the Commonwealth's expert witness to answer a hypothetical question which, Anderson alleges, contained inaccurate statements of the evidence. The Commonwealth presented Dr. Herbert Cooper as an expert in the field of psychiatry in order to establish that Sandra Lewis was

mentally retarded and that she could not have consented to a rape. The hypothetical question posed by the Commonwealth's attorney was as follows:

A woman who is thirty-eight years old and mentally retarded with a functional [age] of a six-year-old child is approached on the street by a middle-aged male she does not know. The male pretends to help her with some laundry he [sic] is carrying and directs her into an apartment. She has never been in the apartment before. Inside she is met by another middle-aged man she does not know. The first man asks her to undress. She refuses. He takes off her shirt [sic] and undergarment. He tells her to sit on the sofa in the living room. She does. She is forced on to the sofa in the living room. One of the men forces her legs. Both men have sexual intercourse with her vaginally and anally ...

Dr. Cooper, do you have an opinion, based on a reasonable degree of medical certainty, ... whether the victim could have consented to the series of events that befell her on June 16th of 1985, as described in the set of hypothetical facts just given?

Anderson maintains that there was no evidence presented at trial that Ms. Lewis refused to take off her clothes, that she was forced onto the sofa, that one of the men forced her legs apart, and that both men had anal intercourse with her. Accordingly, Anderson contends that because the expert opinion was based upon facts not in evidence, the jury could not make an informed evaluation of the testimony of the expert.

 Anderson is correct in asserting that an expert witness is not permitted to express an opinion in response to a hypothetical question which is based upon facts not a part of the record or warranted by the evidence. *Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978). Here, he is incorrect, however, in asserting that the hypothetical question posed to the expert was not a part of the evidence introduced at trial. There was trial testimony that Sandra Lewis was reluctant to undress when asked to by Vinson,

and that Vinson then helped her to disrobe. Sandra Lewis testified that after Vinson removed her shorts and underpants, the two men pushed her back onto the sofa, where Vinson spread her legs open. Finally, she testified that both men had vaginal and anal intercourse with her. Accordingly, there was evidence supporting each of the factual allegations that comprised the hypothetical question presented to the expert. Because these facts were warranted by the evidence, Anderson's second contention is meritless.[3]

Anderson's third contention is that the trial court erred in admitting into evidence an improperly suggestive photographic lineup to be introduced into evidence at trial. Specifically, he alleges that Sandra Lewis testified at the suppression hearing that she was only shown two photographs by the police when she identified Anderson from a photo array. Accordingly, he argues that the photograph array was unduly suggestive and should have been suppressed prior to trial. This claim is meritless.

When this court reviews a suppression order, it is bound by the trial court's findings of fact, as long as those findings are supported by competent evidence. *Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211 (1986). If the suppression court held for the prosecution, in making our review we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Monarch*, 510 Pa. 138, 507 A.2d 74 (1986). In determining the admissibility of a pre-trial identification, the essential criterion to consider is the reliability of the identification under the totality of the circumstances disclosed by the record. *Commonwealth v. Scaine*, 337 Pa.Super. 72, 486 A.2d 486 (1984). Generally, a

---

3. In his Statement of Questions Involved in his brief to this court, Anderson additionally claims that the trial court erred in allowing Dr. Cooper to answer the hypothetical because it involved "the ultimate question of fact for the jury." The Argument section of Anderson's brief, however, is devoid of any elaboration upon this contention. Therefore, this contention is waived. *See Commonwealth v. Balch*, 328 Pa.Super. 71, 476 A.2d 458 (1984).

14

pre-trial identification may be inadmissible at trial if it was obtained by a procedure so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny the accused due process rights. *Commonwealth v. Voss*, 333 Pa.Super. 331, 482 A.2d 593 (1984).

▮▮▮ At bar, Ms. Lewis testified at the preliminary hearing that the photograph array shown to her by police contained only two photographs. However, Ms. Lewis, as mentioned previously, had difficulty understanding the questions asked of her at the preliminary hearing and at trial. Therefore, her testimony cannot be considered dispositive of this issue. Conversely, Sergeant James Walsh of the Lancaster Police testified at the suppression hearing that he showed Ms. Lewis photographs of eleven black males, of which Jonathan Anderson was one. Sergeant Walsh testified that all of the men looked generally like Anderson and all were approximately his age. He further testified that Ms. Lewis had no difficulty in picking out Anderson as one of the men who assaulted her. We, as an appellate court, must consider only the evidence of the prosecution and so much of the evidence for the defense that remains uncontradicted. Considering the evidence within the framework of this standard of review for ruling on suppression orders, we find that, based on the testimony of Sergeant Walsh, the identification procedure utilized by the police at bar was not unduly suggestive. Therefore, the trial court did not abuse its discretion in admitting the photographic identification of Anderson made by Sandra Lewis.

▮▮▮ Anderson's penultimate contention is that the evidence presented by the Commonwealth at trial was insufficient to prove beyond a reasonable doubt that he was guilty of conspiracy to commit rape. Specifically, he argues that there was insufficient evidence to prove an agreement or common understanding between himself and Vinson. We disagree, and find that there was sufficient evidence presented to support a conviction for conspiracy to commit rape.

The test for evaluating the sufficiency of the evidence in a criminal trial is whether, viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, and drawing all reasonable inferences therefrom, the jury could have reasonably determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Aulisio,* 514 Pa. 84, 522 A.2d 1075 (1987).

Conspiracy is defined in Pennsylvania by 18 Pa. C.S.A. Section 903. Relevantly, that statutory section states:

(a) Definition of conspiracy—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

■■■■ Clearly, in order to convict a defendant of conspiracy, a factfinder must conclude that he reached an agreement with his co-conspirator to commit the crime. *Commonwealth v. Graves,* 316 Pa.Super. 484, 463 A.2d 467 (1983). Direct proof of the corrupt agreement, however, is not necessary. *Commonwealth v. Brown,* 351 Pa.Super. 119, 505 A.2d 295 (1986). "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." *Commonwealth v. Campbell,* 353 Pa.Super. 178, 509 A.2d 394 (1986) *quoting Commonwealth v. Strantz,* 328 Pa. 33, 43, 195 A. 75, 80 (1937). Thus, the existence of a common agreement between co-conspirators may be inferred from circumstantial evidence surrounding the allegedly conspiratorial activities, and from the relationship be-

tween and the conduct of the parties. *Commonwealth v. Gordon*, 329 Pa.Super. 42, 477 A.2d 1342 (1984).

Here, Anderson met with Vinson at Anderson's apartment immediately before Vinson brought Sandra Lewis there. Furthermore, there was testimony that Anderson stated that he knew that the acts about to occur at the apartment were wrong. Finally, Anderson was present when Vinson had sexual intercourse with Ms. Lewis, and he had intercourse with her himself. We find that from these facts it can be reasonably inferred that Anderson and Vinson conspired to rape Sandra Lewis. Accordingly, the evidence was sufficient to convict Anderson of this charge.

Finally, Anderson contends that the trial court abused its discretion for failing to take into consideration several mitigating factors in rendering its sentence. The mitigating factors Anderson enumerates are his limited intelligence, his lack of a history of criminal behavior, his expressions of remorse for this event, and his maintenance of steady employment since his arrest.

Initially, we note that Anderson has complied with the requirements of *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), and Pa. R.A.P. 2119(f), by including in his brief a concise statement of the reasons relied upon for allowance of appeal concerning the discretionary aspects of sentence. We must next examine Anderson's claim to determine whether there is a substantial question that the sentence imposed was inappropriate. *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) (*en banc*). We find that Anderson has presented a substantial question here. Accordingly, in the exercise of our discretion, we will address the merits of Anderson's claim. *See Commonwealth v. Felix*, 372 Pa.Super. 145, 539 A.2d 371 (1988).

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion. *Commonwealth v. Fries*, 362 Pa.Super. 163, 523 A.2d 1134

(1987). A sentence must either exceed statutory parameters or be manifestly excessive in order to constitute an abuse of discretion. *Id.*

 Anderson was sentenced to a term of imprisonment of twenty-seven to fifty-four months for conspiracy to commit rape. His sentence of one to two years' imprisonment for indecent assault was imposed to run concurrently. Conspiracy to commit rape is a second degree felony. 18 Pa. C.S.A. 905. The maximum term permitted for felonies of the second degree is ten years' imprisonment. 18 Pa. C.S.A. 1103(2). Clearly, Anderson's sentence was within statutory parameters.

 In considering whether a sentence was manifestly excessive, we must give great weight to the sentencing judge's discretion as he is in the best position to measure various factors, such as the nature of the crime, the defendant's character, and the defendant's displays of remorse, defiance, or indifference. *Fries,* 362 Pa.Super. at 167, 523 A.2d at 1135. Certain factors, however, must be considered by the sentencing court. The court must consider the rehabilitative needs of the defendant, the need for the protection of the public, and the gravity of the offense. *Commonwealth v. Peters,* 358 Pa.Super. 94, 516 A.2d 1197 (1986); *see also Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988).

The sentencing court found that although Anderson has limited intelligence, his age, work history, eight years of schooling, and statements made at trial enabled him to recognize the seriousness of his actions. Furthermore, the court considered the "despicable" nature of the crime when rendering its sentence. Thus, we find that the sentencing court adequately considered the necessary factors for imposing sentence and did not abuse its discretion in sentencing Anderson.

JUDGMENT OF SENTENCE AFFIRMED.