J-S65004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEITH LAMONT DRAIN | |
| Appellant | No. 1836 WDA 2014 |

Appeal from the Judgment of Sentence October 10, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0015145-2009

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 17, 2016**

Keith Lamont Drain appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County.  After our review, we affirm.

On January 12, 1999, Drain shot Alonzo Thompkins in the back. While Thompson was on the ground, lying face-up, Drain pointed the gun at Thompkins' head and fired one more shot at him before leaving the scene. Thompkins survived, and told police who had shot him; a short time later police located Drain and took him into custody.  Drain was charged with one count each of aggravated assault,[1] recklessly endangering another person,[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702.

attempted homicide,[3] and a violation of the Uniform Firearms Act (VUFA).[4] The Commonwealth eventually withdrew the charges at the preliminary hearing stage because the victim was unable to appear. Thompkins' injuries rendered him a paraplegic.

Ten years later, on March 10, 2009, Thompkins died. Forensic Pathologist Abdulrezak Shakir performed an autopsy and determined that Thompkins died, at the age of 37, from multiple organ failure due to sepsis, caused by various skin ulcers and infections resulting from his paraplegia.

On August 30, 2009, the Commonwealth charged Drain with one count of criminal homicide,[5] one count of persons not to possess a firearm,[6] and one count carrying a firearm without a license.[7] In July 2011, Drain filed omnibus pretrial motions, which included a motion to dismiss, a motion to sever and a motion to suppress. On June 30, 2014, the trial court granted the motion to sever the charge of persons not to possess a firearm and denied the remaining motions.

*(Footnote Continued)* ————————————

[2] 18 Pa.C.S. § 2705.

[3] 18 Pa.C.S. §§ 901, 2502.

[4] 18 Pa.C.S. §§ 6105, 6106.

[5] 18 Pa.C.S. § 2501.

[6] 18 Pa.C.S. § 6105.

[7] 18 Pa.C.S. § 6106.

Drain was tried before a jury, the Honorable David R. Cashman presiding. On October 10, 2014, the jury convicted Drain of third-degree murder and carrying a firearm without a license, and the court sentenced Drain to 23 ½ to 47 years' incarceration. Drain did not file post-sentence motions. On appeal, Drain raises the following issues:

1. Did the trial court err when it permitted the late prosecution of this action to proceed in violation of [Drain's] due process rights for a fair trial and to be tried without undue delay and a speedy trial under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution and under Pa.R.Crim.P. 600;

2. Did the trial court err in allowing hearsay evidence in regarding Alonzo Thompkins' statements to the police in 1999 when the evidence does not meet the criteria as an excited utterance exception to the hearsay rule;

3. Did the trial court err in admitting into evidence numerous photographs of Alonzo Thompkins' bedsores in that its probative value – if any – was outweighed by the danger of unfair prejudice, confusion of the issues, and cumulative evidence of the victim's physical condition when he died;

4. Was the evidence insufficient to support the guilty verdict in this case, in that it was never proven beyond a reasonable doubt that [Drain] was the perpetrator of this crime especially given the lengthy delay between [Drain's] arrest and his trial;

5. Was the verdict against the weight of the evidence in that no evidence was produced that [Drain] knew the victim or had a motive to kill him; neither [Drain's] fingerprints nor his DNA were found on the gun used in the shooting; nor was any gunshot residue found on [Drain].

Appellant's Brief, at 5-6.

After our review, we find no error or abuse of discretion, and we conclude that Judge Cashman has accurately addressed Drain's claims on appeal.[8]  We, therefore, rely on his well-reasoned trial court opinion to affirm the judgment of sentence.  **See** Trial Court Opinion, 1/25/16, at 5-16. We instruct the parties to attach a copy of Judge Cashman's opinion in the event of further proceedings.

Judgment of sentence affirmed.

_____

[8] We add that in response to the Commonwealth's brief in reply to Drain's brief in support of omnibus pretrial motions, Drain states: "[T]he Commonwealth has proposed, quite properly, that the homicide charge could not have been previously brought because the victim had not yet died.  **The defense concedes this point and, in fact, requested a dismissal under Pa.R.Crim.P. Rule 600 only of the non-homicide charges**." Response to Commonwealth Brief, 5/10/12, at 5 (emphasis added).  However, pursuant to 42 Pa.C.S. § 5551(4), the two-year statute of limitations for the offense of carrying a firearm without a license, 42 Pa.C.S. § 5552 (graded as a felony of the third degree), does not apply where a felony is "alleged to have been perpetrated in connection with a murder of the first or second degree, as set forth in 18 Pa.C.S. § 2502(a) or (b) and (d) (relating to murder)."  42 Pa.C.S. § 5551.  **See Commonwealth v. Russell**, 938 A.2d 1082 (Pa. Super. 2007) (non-homicide felonies charged were alleged to have been perpetrated in connection with second-degree murder charge already charged against defendant, for purposes of the felony perpetrated in connection with a murder exception to the statute of limitations; non-homicide felonies were alleged by Commonwealth to have arisen from same operative facts as charge of second-degree murder).  We note also that Drain was charged Criminal Homicide (murder, generally).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/17/2016

**FILED**

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

DEC 2 2 2015

**Post Trial Unit**

COMMONWEALTH OF
PENNSYLVANIA

    v.

MARQUISE WALIYYUDDIN

:
:
:
:
:
:
:
:

CP-51-CR-0008582-2011



CP-51-CR-0008582-2011 Comm. v. Waliyyuddin, Marquise P.
Opinion

7386327231

OPINION

BRONSON, J.                                                                December 22, 2015

On March 22, 2013, following a non-jury trial before this Court, defendant Marquis

Waliyyuddin was convicted of one count of involuntary manslaughter (18 Pa.C.S. § 2504(a)) and

one count of endangering the welfare of a child ("EWOC") (18 Pa.C.S. § 4304(a)(1)).[1] The

Court deferred sentencing so that a pre-sentence report and mental health evaluation could be

prepared. On May 24, 2013, the Court sentenced defendant to four to eight years in state prison

for the involuntary manslaughter charge and one to two years for the EWOC charge, to run

consecutively, for an aggregate sentence of five to ten years ("original sentence"). Defendant

filed a post-sentence motion, which the Court denied on September 16, 2013. Defendant

appealed the sentence imposed by the Court and, on November 25, 2014, the Superior Court held

that EWOC and involuntary manslaughter merged for purposes of sentencing, vacated

defendant's sentence, and remanded for a new sentencing hearing. On April 14, 2015, the

Pennsylvania Supreme Court denied the Commonwealth's petition for *allocator*. Pursuant to the

Superior Court remand, the Court held a new sentencing hearing on July 31, 2015, and sentenced

defendant to five to ten years incarceration on the involuntary manslaughter charge ("new

sentence"). Defendant filed post-sentence motions, which the Court denied on November 17,

---

[1] The Court acquitted defendant of one count of third-degree murder (18 Pa.C.S. § 2502(c)).



2015. Defendant has now appealed his sentence on the grounds that: 1) the Court improperly sentenced defendant beyond the aggravated range based on an improper factor; 2) the Court's sentence was manifestly excessive and unreasonable; and 3) the Court erred at sentencing by improperly relying on defendant's arrest record. Statement of Errors Complained of on Appeal at ¶ 4 ("Statement of Errors"). For the reasons set forth below, defendant's claims are without merit.

## I. FACTUAL BACKGROUND

The factual basis for this matter was summarized in this Court's opinion in defendant's original direct appeal as follows:

> At trial, the Commonwealth presented the testimony of Yywanka Walker, Katrina Rodriguez, Luis Torres, Dr. Shaheen Timmapuri, Dr. Aaron Rosen, Dr. Lucy Rorke-Adams, Philadelphia Police Officer Christopher Brennan, and Philadelphia Police Detective John Harkins. Defendant presented the testimony of Dr. Jan Edward Leestma. Viewed in the light most favorable to the Commonwealth as the verdict winner, their testimony established the following.

> On the evening of Saturday, May 14, 2011, defendant was at the apartment of his friend, Katrina Rodriguez, who was the mother of A.S., a healthy three-month-old baby boy. N.T. 3/20/2013 at 52-56, 59. Defendant was the godfather of A.S., and had babysat for him on several occasions without incident. N.T. 3/20/2013 at 57-58. Also present was defendant's boyfriend, Luis Torres. N.T. 3/20/2013 at 50-51, 59. At around 11:00 p.m., defendant told Rodriguez that he wanted to keep A.S. for an overnight stay. N.T. 3/20/2013 at 59. Rodriguez agreed that defendant could take A.S. to the apartment that defendant shared with Torres until the next day. N.T. 3/20/2013 at 66. Defendant and Torres left with A.S., who was alert and without any observable problems at the time. N.T. 3/20/2013 at 66-69, 143-144, 148.

> Sometime during the afternoon of the next day, Torres left defendant and A.S. to visit Torres' mother for dinner. N.T. 3/20/2013 at 165-167. During dinner, Torres received a frantic call from defendant, who told Torres that A.S. was not breathing. N.T. 3/20/2013 at 167. Torres, his brother, and his aunt left the house and rushed to defendant's apartment. N.T. 3/20/2013 at 169-170. When they arrived and saw A.S., Torres's aunt called 911. N.T. 3/20/2013 at 171-172.

> Paramedics arrived at the apartment at approximately 7:30 p.m. N.T. 3/20/2013 at 39-40. A.S. was taken to St. Christopher's Hospital, where, despite emergency cranial surgery, he died at 11:55 p.m. N.T. 3/20/2013 at 44; 3/21/2013 at 11-12, 28. The

2

autopsy of A.S. revealed subarachnoid and subdural hematomas, and optic-nerve hemorrhages, all consistent with vigorous shaking of the baby's head. N.T. 3/21/2013 at 13, 35, 41-42. The medical examiner requested a consult from a pediatric neuropathologist, who concluded that A.S. died from abusive head trauma. N.T. 3/21/2013 at 118-119.

Defendant gave a statement to police on May 16, 2011. N.T. 3/20/2013 at 225. In that statement, he admitted to getting frustrated when A.S. awoke during the night crying, and that he "was rocking him harder, and was shaking him, just trying to get him to stop crying." N.T. 3/20/2013 at 233. He further admitted putting A.S. into his car seat and "rocking the car seat back and forth pretty hard" causing A.S. to bounce back and forth in the seat. Defendant stated that he "could hear [A.S.'s] head bouncing back on the back of the car seat." N.T. 3/20/2013 at 233. According to defendant, this eventually caused A.S. to stop crying. N.T. 3/20/2013 at 233. Defendant was subsequently arrested. N.T. 3/20/2013 at 239-240.

Trial Court Opinion, filed 1/6/14 at 2-3.

## II. DISCUSSION

*A. Improper Sentencing Factor*

Defendant first claims that "[t]he Court erred in sentencing Appellant beyond the aggravated range of the Sentencing Guidelines based on an improper factor, that is, the age of the victim, a factor already contemplated and provided for by the Guidelines in the grading of the crime and in the offense gravity score." Statement of Errors at ¶ 4(a). This claim was set forth in defendant's appeal of his original sentence. However, as the Superior Court remanded this matter for new sentencing, the Superior Court did not address defendant's challenge in its November 25, 2014 opinion. Superior Court Opinion, filed 11/25/14 at p. 10. This claim is without merit.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion." *Commonwealth v. Anderson*, 552 A.2d 1064, 1072 (Pa. Super. 1988), *app. denied*, 571 A.2d 379 (Pa. 1989); *see Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). Where the sentence falls

3

outside the Sentencing Guidelines, the sentence should be affirmed on appeal unless it is "unreasonable." 42 Pa.C.S. § 9781(c)(3); *see Commonwealth v. P.L.S.*, 894 A.2d 120, 130 (Pa. Super. 2006). "The sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community." *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002), *appeal denied*, 820 A.2d 703 (Pa. 2003). The factual basis and reasons for the departure must be stated on the record. *Id.*

Involuntary manslaughter is ordinarily a first-degree misdemeanor. However, where, as here, the victim is under the age of 12 years old, and is in the care, custody or control of the person who caused the death, the offense is graded as a second degree felony. 18 Pa.C.S. § 2504(b). More importantly for defendant's argument, while the offense gravity score for involuntary manslaughter graded as a first-degree misdemeanor is 6, the offense gravity score increases to 8 for the second-degree felony. *See* 204 Pa.Code § 303.15. Defendant is correct that it would be unlawful to premise a departure above the guidelines on a factor that the guidelines have explicitly taken into account. Therefore, defendant argues that since the guidelines already augment the offense gravity score when the victim is young, the Court erred in considering the age of the victim as a reason for an upward departure.

Here, however, at both the original sentencing hearing and the new sentencing hearing, the Court premised its departure above the guidelines not merely on the fact that the victim was under the age of twelve, which was contemplated by the guidelines, but rather on the fact that as a three-month old baby, the victim was in a far more vulnerable subclass of children under the age of 12. The Court stated at both hearings that, "when you have an infant as a victim, three-

4

month-old-victim and when the guidelines come from a population of everybody under 12 years old, this is a particularly vulnerable subclass of that category not taken into account by the sentencing guidelines." N.T. 5/24/2013 at 36; 7/31/15 at 18.

Moreover, defendant's claim that it is improper to base an upward departure on the precise age of the victim when the guidelines explicitly account for youth has been squarely rejected by the Supreme Court of Pennsylvania. *See Commonwealth v. Walls*, 926 A.2d 957, 966-67 (Pa. 2007). In *Walls*, the defendant was convicted of the rape of a victim less than 13 years old and involuntary deviate sexual intercourse of a child less than 13 years old. 926 A.2d at 966. The sentencing court departed above the Sentencing Guidelines on both charges, giving as one of the reasons for the departure that the victim was only seven years old. *Walls*, 926 A.2d at 960. The Supreme Court affirmed the judgment of sentence, holding that the sentencing court could properly use the victim's precise age to justify a departure above the Guidelines. *Walls*, 926 A.2d at 967. As the Court stated, "the fact that the victim was only seven years old at the time of the sexual abuse was not an element of rape or IDSI with a victim less than thirteen years old and could justify an above-guideline sentence which might be more heinous than the rape of an older child." *Walls*, 926 A.2d at 966.

The case at bar is indistinguishable from *Walls*. If it is lawful to consider as a ground for departing from the guidelines that a victim is seven years old, when the guidelines apply to all children under the age of 13, then *a fortiori*, it is entirely proper to consider the particular vulnerability of a three-month-old when the guidelines apply to all children under the age of 12.

## B. Manifestly Excessive Sentence

Defendant next claims that the Court erred "in imposing a sentence both manifestly excessive and unreasonable under all the circumstances of the case." Statement of Errors at ¶ 4(b). This claim is without merit.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion." *Commonwealth v. Anderson*, 552 A.2d 1064, 1071 (Pa. Super. 1998); *see Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007). The sentencing court must consider the need to protect the public, the gravity of the offense in relation to the impact upon the victim, the rehabilitative needs of the defendant, and the Sentencing Guidelines. 42 Pa.C.S. § 9721(b); *see Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa. Super. 2005) (quoting *Commonwealth v. Monahan*, 860 A.2d 180, 184 (Pa. Super. 2004)). "[An] appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is unreasonable." *Walls*, 962 A.2d at 963; 42 Pa.C.S. § 9781(c)(3).

Here, in fashioning an appropriate sentence, the Court explicitly considered the evidence presented during defendant's trial, the information contained in the pre-sentence report, the Sentencing Guidelines, the gravity of the offense, the mitigation evidence submitted on behalf of defendant, as well as the rehabilitative needs of defendant. N.T. 7/31/15 at 4-5.[2] Moreover, the record demonstrates that the Court's sentence of five to ten years in prison, albeit in excess of the sentencing guidelines, was well justified. Defendant extinguished the life of a defenseless baby

---

[2] Defendant's prior record score was zero. N.T. 5/24/13 at 4. Using the basic sentencing matrix, and applying the Sixth Edition Revised Sentencing Guidelines, the parties agreed that the charge of involuntary manslaughter was assigned a standard range of 9 to 16 months, plus or minus 9 months for the aggravated and mitigated ranges, respectively. N.T. 5/24/13 at 4-5.

6

entrusted to his care because he became frustrated with the baby's crying. His admitted conduct, of shaking the baby aggressively and vigorously, even while the baby's head was banging on the back of a car seat, until he succeeded in silencing the infant, was an egregious misbehavior that the court properly believed to be outside of the heartland of a typical involuntary manslaughter case. Moreover, as the Court stated at sentencing, defendant's prior record score of zero greatly understated defendant's criminal history. N.T. 5/24/2013 at 36-37; 7/31/15 at 20. Although defendant was never convicted of a crime, he had six arrests, including three domestic violence incidents. N.T. 5/24/2013 at 17-18, 36-37; 7/31/15 at 18-20. Under all of the circumstances, a departure above the sentencing guidelines was appropriate and reasonable. Therefore, the Court's sentence should not be disturbed.

### C. Reliance upon Defendant's Arrest Record

Finally, defendant claims that the Court erred by "improperly relying on [defendant's] arrest record as evidence of prior criminality and a predictor of future misconduct." Statement of Errors at ¶ 4(c). However, "[i]t has been held that a court, in imposing sentence may consider prior arrests...as long as the court realizes that the defendant has not been convicted on those prior charges." *Commonwealth v. Bryant*, 458 A.2d 1010, 1011-12 (Pa. Super. 1983) (*quoting Commonwealth v. Craft*, 450 A.2d 1021, 1024 (Pa. Super. 1981). As stated above, while recognizing at sentencing that defendant was never convicted of a crime, he had six arrests, including three domestic violence incidents, which the Court was permitted to consider. N.T. 5/24/2013 at 17-18, 36-37; 7/31/15 at 18-20. Accordingly, this claim is without merit.

7

## III. CONCLUSION

For all of the foregoing reasons, the Court's judgment of sentence should be affirmed.


BY THE COURT:

GLENN B. BRONSON, J.